MONROE COUNTY SHERIFF v FRATERNAL ORDER OF POLICE,
LODGE 113

Docket No. 69789. Submitted February 23, 1984, at Detroit.—Decided
August 20, 1984.

A Monroe County Deputy Sheriff filed a grievance protesting the
termination of his employment. The grievance went to arbitra-
tion. The arbitrator found the grievance to be arbitrable and
that the deputy had engaged in wrongdoing and was guilty of
neglect of duty and ordered reinstatement of the deputy to his
former position without back pay. The Monroe County Sheriff
and the Monroe County Board of Commissioners brought an
action in the Monroe Circuit Court against the Fraternal Order
of Police, Lodge 113, to vacate the award. The FOP counter-
claimed for enforcement of the award. The court, Henry T.
Conlin, J., agreed that the grievance was arbitrable but refused
to enforce the award, holding that the arbitrator had exceeded
his authority by modifying the discipline imposed. The FOP
appealed and the sheriff and the board of commissioners cross-
appealed. *Held:*

1. Whether a dispute is arbitrable under a collective-bargain-
ing agreement is a question for the court, but the inquiry is
confined to ascertaining whether the party seeking arbitration
is making a claim which on its face is governed by the contract.
In deciding whether a dispute involving an issue of contract
interpretation is arbitrable, a court should guard against the
temptation to make its own interpretation of the substantive
provisions of the contract encompassing the merits of the
dispute. If the parties have agreed that an arbitrator shall
decide questions of contract interpretation, the merits of the
dispute are for the arbitrator. The grievance involved contract

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 48A Am Jur 2d, Labor and Labor Relations §§ 1856, 1859, 1861,
1862.
   Validity and construction of statutes or ordinances providing for
   arbitration of labor disputes involving public employees. 68
   ALR3d 885.
[5] 48A Am Jur 2d, Labor and Labor Relations § 1895.
[6] 48A Am Jur 2d, Labor and Labor Relations § 1773.

interpretation and was arbitrable under the arbitration clause of the contract.

2. An arbitrator to whom a claim of discharge without just cause is submitted may, in the absence of language in the collective-bargaining agreement clearly and unambiguously to the contrary, determine that, while the employee is guilty of some infraction, the infraction did not amount to just cause for discharge and impose some less severe penalty.

3. A collective-bargaining agreement executed pursuant to the public employment relations act does not abrogate a sheriff's exclusive authority to determine which of his deputies shall be delegated the powers of law enforcement, and an arbitrator has no authority to order a sheriff to restore a deputy's law enforcement powers before the sheriff, in his discretion, is prepared to do so.

Reversed and remanded with instructions to enter an order enforcing the arbitration award except to the extent that the award would require the sheriff to reinstate the deputy to a position having law enforcement powers.

1. LABOR RELATIONS — ARBITRATION — COLLECTIVE-BARGAINING AGREEMENTS.

Whether a dispute is arbitrable under a collective-bargaining agreement is a question for the court, but the inquiry is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract; whether the party is right or wrong is a question of contract interpretation for the arbitrator.

2. LABOR RELATIONS — ARBITRATION — COLLECTIVE-BARGAINING AGREEMENTS.

Absent an express provision in a collective-bargaining agreement excluding a particular grievance from arbitration under the arbitration clause, or the most forceful evidence of a purpose to exclude the claim, the matter should go to arbitration.

3. ARBITRATION — CONTRACTS — INTERPRETATION.

In deciding whether a dispute involving an issue of contract interpretation is arbitrable, a court should guard against the temptation to make its own interpretation of the substantive provisions of the contract encompassing the merits of the dispute; if the parties have agreed that an arbitrator shall decide questions of contract interpretation, the merits of the dispute are for the arbitrator.

4. LABOR RELATIONS — COLLECTIVE-BARGAINING AGREEMENTS — DIS-
PUTES — ARBITRATION.

Where a court finds itself weighing the pros and cons of each
party's interpretation of substantive provisions of a labor con-
tract containing an arbitration clause, it is likely that the court
has gone astray; the question for the court is not whether the
one interpretation or another is correct, but whether the par-
ties have agreed that an arbitrator shall decide which of the
competing interpretations is correct.

5. ARBITRATION — COLLECTIVE-BARGAINING AGREEMENTS — DIS-
CHARGE FROM EMPLOYMENT.

An arbitrator to whom a claim of discharge without just cause is
submitted may, in the absence of language in the collective-
bargaining agreement clearly and unambiguously to the con-
trary, determine that, while the employee is guilty of some
infraction, the infraction did not amount to just cause for
discharge and may impose some less severe penalty.

6. SHERIFFS AND CONSTABLES — COLLECTIVE-BARGAINING AGREEMENTS
— ARBITRATION — LAW ENFORCEMENT POWERS.

A collective-bargaining agreement executed pursuant to the pub-
lic employment relations act does not abrogate a sheriff's
exclusive authority to determine which of his deputies shall be
delegated the powers of law enforcement, and an arbitrator has
no authority to order a sheriff to restore a deputy's law enforce-
ment powers before the sheriff, in his discretion, is prepared to
do so.

*David P. Woods,* for plaintiff.

*Lippitt, Lyons & Whitefield* (by *John A. Lyons),*
for defendant.

Before: D. E. HOLBROOK, JR., P.J., and MAC-
KENZIE and E. A. QUINNELL,* JJ.

PER CURIAM. The Fraternal Order of Police,
Lodge 113 (FOP), appeals as of right, and the
Monroe County Sheriff and Monroe County Board
of Commissioners cross-appeal, from an order of
the circuit court denying enforcement of an arbi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tration award. The parties on appeal are parties to a collective-bargaining agreement executed pursuant to the public employment relations act (PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.* The agreement provided for a grievance procedure culminating in final and binding arbitration of grievances. The instant case arose from a grievance filed by a deputy sheriff protesting the termination of his employment.

As a preliminary matter, the issue of whether the deputy's grievance was arbitrable was submitted to the arbitrator, who found the grievance arbitrable based on the "just cause" provision of the collective-bargaining agreement. The arbitrator then proceeded to the merits of the grievance, finding that the deputy had engaged in wrongdoing and was guilty of neglect of duty, and ordering reinstatement of the deputy to his former position but without back pay. The sheriff and board filed a complaint in the circuit court seeking vacation of the award, and the FOP counterclaimed for enforcement of the award. The circuit court agreed with the FOP and the arbitrator that the deputy's grievance was subject to arbitration. However, the court refused to enforce the award on the ground that the arbitrator exceeded the scope of his authority by modifying the discipline imposed from discharge to, in effect, a mere suspension without pay; in the circuit court's analysis, the arbitrator was limited to determining whether just cause for discipline existed, and could not properly consider whether the "punishment fit the crime".

We first address the threshold question presented by the sheriff and board on cross-appeal, whether the deputy's grievance of his termination was arbitrable. The sheriff and board contend that the arbitrator lacked jurisdiction because the sheriff's statutory power to appoint at his pleasure,

and to revoke at any time the appointment of, deputy sheriffs under MCL 51.70; MSA 5.863 was reserved in § 3.3 of the collective-bargaining agreement. That section reads in pertinent part as follows:

"Section 3.3 Management Rights. The Lodge recognizes that the management of the operations of the Sheriff's Department is solely a responsibility of the Sheriff and that nothing in this Agreement can restrict, interfere with or abridge any rights, powers, authority, duties or responsibilities conferred upon or vested in the County or the Sheriff by the laws and Constitution of the State of Michigan or of the United States of America."

While the sheriff and board acknowledge that a sheriff's statutory power under MCL 51.70; MSA 5.863 to discharge deputy sheriffs at will may be modified or abrogated by a collective-bargaining agreement executed pursuant to PERA, *Local 1518, Council 55, American Federation of State, County & Municipal Employees, AFL-CIO v St Clair County Sheriff,* 77 Mich App 145, 148-149; 258 NW2d 168 (1977), *rev'd on other grounds* 407 Mich 1; 281 NW2d 313 (1979); *National Union of Police Officers Local 502-M, AFL-CIO v Wayne County Bd of Comm'rs,* 93 Mich App 76, 89; 286 NW2d 242 (1979); *Fraternal Order of Police, Ionia County Lodge No 157 v Bensinger,* 122 Mich App 437, 442; 333 NW2d 73 (1983), *lv den* 418 Mich 853 (1983), they argue that the terms of the collective-bargaining agreement involved herein provided for the retention of that statutory power. The FOP, on the other hand, argues that the circuit court correctly determined that the deputy's grievance was arbitrable, relying on the "discharge for just cause" language of § 3.31, which immediately fol-

lows § 3.3 and provides in pertinent part as follows:

"*Section 3.31* In addition to all such rights conferred by law, the County and the Sheriff reserve the right to manage its affairs efficiently and economically, including, but not by way of limitation, the * * * right to hire, to suspend or discharge for just cause, * * * subject to express provisions of this Agreement as herein set forth."

The collective-bargaining agreement defines a grievance as follows:

"*Section 4.1 Definition of grievance.* A grievance shall be deemed to exist only whenever there develops a disagreement between the County or the Sheriff and one or more of the employees represented by the Lodge as to the interpretation, application or alleged violation of specific provisions of this Agreement."

Section 4.2 of the grievance procedure provides that if a grievance is not satisfactorily settled at step 3 of the procedure, "either party may request that the grievance be submitted to binding arbitration". The collective-bargaining agreement defines the powers of the arbitrator as follows:

"*Section 4.34 Power of the Arbitrator.* "[T]he decision of the arbitrator must be based on an interpretation of one or more of the provisions of this Agreement or any supplement or amendment thereto. The arbitrator shall have no power to add to, take from, modify or alter this Agreement or any supplement or amendment thereto. Any matter submitted to arbitration over which the arbitrator has no power to rule shall be referred back to the parties without decision."

In *Kaleva-Norman-Dickson School Dist No 6 v Kaleva-Norman-Dickson School Teachers' Ass'n,*

393 Mich 583; 227 NW2d 500 (1975), our Supreme Court addressed the proper scope of judicial inquiry into the arbitrability of a dispute arising under a collective-bargaining agreement entered into pursuant to PERA, following United States Supreme Court enunciations as to arbitrability under federal law:

> "In *United Steelworkers of America v American Manufacturing Co,* 363 US 564, 568; 80 S Ct 1343; 4 L Ed 2d 1403 (1960), the Court said that while the question whether a dispute is arbitrable is for a court, the judicial inquiry 'is confined to ascertaining whether the party seeking arbitration is making *a claim which on its face* is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator.' (Emphasis supplied.)

> \* \* \*

> "In *United Steelworkers of America v Warrior & Gulf Navigation Co,* 363 US 574, 582-583; 80 S Ct 1347; 4 L Ed 2d 1409 (1960), the \* \* \* Court said, 'An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the *arbitration clause* is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' (Emphasis supplied.) Absent an *'express provision'* excluding [a] particular grievance from arbitration' or the *'most forceful evidence* of a purpose to exclude the claim', (emphasis supplied) the matter should go to arbitration." *Kaleva-Norman-Dickson, supra,* pp 591-592.

Reviewing courts are not to engage in interpretation of the collective-bargaining agreement where, as here, the parties have agreed that an arbitrator decide questions of contract interpretation:

> "In deciding whether a dispute involving an issue of contract interpretation is arbitrable, a court should guard against the temptation to make its own interpre-

tation of the substantive provisions of the contract encompassing the merits of the dispute. If the parties have agreed that an arbitrator shall decide questions of contract interpretation, the merits of the dispute are for the arbitrator.

"Where a court finds itself weighing the pros and cons of each party's interpretation of substantive provisions of the contract, it is likely that the court has gone astray. The question for the court is not whether one interpretation or another is correct, but whether the parties have agreed that an arbitrator shall decide which of the competing interpretations is correct." *Kaleva-Norman-Dickson, supra,* pp 594-595.

We find that the grievance protesting the deputy's termination was arbitrable. The grievance claimed that the "just cause for discharge" provision of the collective-bargaining agreement was violated, the arbitration clause gave the arbitrator authority to interpret the provisions of the agreement, and there was no explicit provision precluding, nor the most forceful evidence of an intent to preclude, arbitration of claims of wrongful discharge by deputy sheriffs. Compare *Kaleva-Norman-Dickson, supra;* contrast *Lanting v Jenison Public Schools,* 103 Mich App 165; 302 NW2d 631 (1981), *lv den* 411 Mich 1066 (1981). The collective-bargaining agreement is ambiguous in that, while § 3.3 reserves powers conferred upon the sheriff by state law, apparently including the sheriff's statutory powers under MCL 51.70; MSA 5.863, the following § 3.31 provides for "discharge for just cause", apparently applying to the discharge of deputy sheriffs as well as other employees. On the one hand, § 3.3 might be viewed as reserving only those statutory powers related to "management of the operations" generally, and not including MCL 51.70; MSA 5.863, with § 3.31 additionally conferring the specific power to discharge but only for

just cause, applicable to all employees including deputies; on the other hand, one might view § 3.3 as reserving virtually every statutory power, including MCL 51.70; MSA 5.863, and infer that the "discharge for just cause" provision of § 3.31 does not apply to deputy sheriffs. We may not, as the sheriff and board would have us, engage in interpretation of the collective-bargaining agreement in order to reach the conclusion that the grievance was not arbitrable. The question of which of the parties' interpretation of the agreement is correct was a matter for the arbitrator, *Kaleva-Norman-Dickson, supra,* pp 594-595, and we are not at liberty to review on appeal the correctness of the arbitrator's interpretation of the agreement as protecting the deputy-grievant from discharge without just cause, despite the language reserving the sheriff's statutory powers:

"[T]he question of interpretation of the collective-bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of America v Enterprise Wheel & Car Corp,* 363 US 593, 599; 80 S Ct 1358; 4 L Ed 2d 1424 (1960).

We must likewise reject the sheriff and board's contention that the deputy's termination of employment was not a "discharge" but merely a nonrenewal of his appointment. Whether the deputy's loss of employment fell within the meaning of "discharge" for purposes of the "discharge for just cause" language of the collective-bargaining agreement was a matter of contract interpretation for the arbitrator and hence not subject to judicial

review. We note that, while it might be argued that a collective-bargaining agreement cannot abrogate a sheriff's authority to demote a deputy to a position involving no law enforcement powers, see *National Union, supra; Fraternal Order of Police v Bensinger, supra,* such was not the case here since the deputy was not merely stripped of his law enforcement powers but rather was terminated altogether.

We now turn to the FOP's claim on appeal that the circuit court erred in refusing to enforce the award on the ground that the arbitrator was without authority to modify the discipline of discharge and order reinstatement of the deputy. The arbitrator's award clearly reflects that, while he found the deputy guilty of neglect of duty, he did not find "just cause for discharge" and reinstated the deputy without back pay, in effect imposing a less severe penalty of suspension without pay.

Federal courts have taken the view that an arbitrator to whom a claim of discharge without just cause is submitted may, in the absence of language in the collective-bargaining agreement clearly and unambiguously to the contrary, determine that, while the employee is guilty of some infraction, the infraction did not amount to just cause for discharge and impose some less severe penalty. See, *e.g., Retail Clerks Union Local No 1557 v Murfreesboro Vending Service, Inc,* 689 F2d 623 (CA 6, 1982); *Timken Co v United Steelworkers of America,* 492 F2d 1178 (CA 6, 1974); *International Union of District 50, United Mine Workers of America v Bowman Transportation, Inc,* 421 F2d 934 (CA 5, 1970); *Gulf States Telephone Co v Local 1692, International Brotherhood of Electrical Workers,* 416 F2d 198 (CA 5, 1969). An arbitrator's imposition of a less severe penalty is without

authority and contrary to the terms of the collective-bargaining agreement where the agreement clearly reserves to the employer, without being subject to review by an arbitrator, the power to discharge for the infraction found by the arbitrator to have been committed. See, *e.g., Amanda Bent Bolt Co v International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, Local 1549,* 451 F2d 1277 (CA 6, 1971); *International Brotherhood of Firemen & Oilers v Nestle Co,* 630 F2d 474 (CA 6, 1980); *Local 342, United Automobile, Aerospace & Agricultural Implement Workers of America v TRW, Inc,* 402 F2d 727 (CA 6, 1968), *cert den* 395 US 910; 89 S Ct 1742; 23 L Ed 2d 223 (1969). We adopt this approach as our own.

In the present case, the collective-bargaining agreement contains no provision reserving to the sheriff the right to discharge an employee found guilty of neglect of duty, and although § 12.1 of the agreement gives the sheriff the right to establish rules relating to discipline and disciplinary penalties, the sheriff and board fail to point to any such rule making discharge the penalty for neglect of duty. Nor do we find any other provision in the collective-bargaining agreement clearly precluding an arbitrator from modifying a discharge imposed by the sheriff to a less severe penalty. Indeed, on the contrary, § 12.2 of the agreement provides that an employee may grieve any disciplinary action taken against him if he files a written grievance within the time limit specified, and under § 4.2 any grievance not satisfactorily settled at step 3 may be submitted to arbitration. The sheriff and board's reliance on *Textile Workers Union of America v American Thread Co,* 291 F2d 894 (CA 4, 1961), is misplaced since there the management

rights clause of the agreement not only gave the employer the right to discipline or discharge for just cause, but further provided, unlike the agreement in this case, that any such action by the employer was subject to the grievance procedure "up to but not including arbitration". We conclude that the circuit court erred in finding that the arbitrator was without authority to reduce the discipline from discharge to, in effect, a suspension without back pay.

However, while we find that the arbitrator did not exceed his authority in reinstating the deputy, we agree with the sheriff and board that the arbitrator was without authority to reinstate him "to his former position" to the extent that that position involves the exercise of law enforcement powers. A collective-bargaining agreement executed pursuant to PERA does not abrogate a sheriff's exclusive authority to determine which of his deputies shall be delegated the powers of law enforcement, and an arbitrator has no authority to order a sheriff to restore a deputy's law enforcement powers before the sheriff, in his discretion, is prepared to do so. *National Union, supra,* pp 89-90; *Fraternal Order of Police v Bensinger, supra,* pp 445-446.

The circuit court's order denying enforcement of the arbitration award is reversed, and the case remanded for entry of an order enforcing the arbitration award, except to the extent the award would require the sheriff to reinstate the deputy to a position having law enforcement powers. No costs, neither party having fully prevailed.