LENAWEE COUNTY SHERIFF v POLICE OFFICERS LABOR COUNCIL

Docket No. 211705. Submitted September 15, 1999, at Detroit. Decided December 14, 1999, at 9:05 A.M.

The Lenawee County Sheriff and the Lenawee County Board of Commissioners brought an action in the Lenawee Circuit Court against the Police Officers Labor Council, seeking to vacate an arbitration award involving Steven Nystrom, who was discharged from his employment as a deputy sheriff corrections officer for Lenawee County in 1996. After exhausting the grievance procedures under the terms of a collective bargaining agreement between the plaintiffs and the defendant, Nystrom sought reinstatement pursuant to the arbitration process provided in the agreement. In 1997, the arbitrator found that the dismissal, which was based on Nystrom's polygamy for over nine months in 1987-88 and his related false statements on official documents, was wrongful, sustained Nystrom's grievance, and awarded him reinstatement with back salary, benefits, and seniority. The court, Michael R. Smith, J., sitting by assignment, granted the plaintiff's motion for summary disposition and ordered the arbitrator's award vacated, finding that the arbitrator exceeded his authority and the award was contrary to public policy. The defendant appealed.

The Court of Appeals *held*:

The collective bargaining agreement limited the arbitrator's powers to the application and interpretation of the agreement as written. The arbitrator exceeded the authority granted in the collective bargaining agreement and erroneously determined that Nystrom's discharge was untimely and without just cause. An arbitrator may not act on a sense of personal justice, but is confined to interpretation and application of the agreement. The arbitrator exceeded his contractual authority by violating the plain meaning of the employer's rules and regulations and sections of the collective bargaining agreement, by which the parties were contractually bound, and by adding to the agreement requirements that did not exist. The arbitrator's decision did not draw its essence from the agreement. The trial court properly vacated the arbitrator's award.

Affirmed.

1. ARBITRATION — COLLECTIVE BARGAINING AGREEMENTS.

    Labor arbitration is a product of contract, and an arbitrator's authority to resolve a dispute arising out of the appropriate interpretation of a collective bargaining agreement is derived exclusively from the agreement.

2. ARBITRATION — JUDICIAL REVIEW.

    Judicial review of an arbitrator's decision is limited to a determination whether the arbitrator's award draws its essence from the collective bargaining agreement; if the arbitrator in granting the award did not disregard the terms of the arbitrator's employment and the scope of the arbitrator's authority as expressly circumscribed in the agreement, judicial review effectively ceases.

*Keller, Thoma, Schwarze, Schwarze, DuBay & Katz, P.C.* (by *Carl F. Schwarze* and *Richard W. Fanning, Jr.*), for the plaintiffs.

*John A. Lyons, P.C.* (by *Timothy J. Dlugos*), for the defendant.

Before: WHITBECK, P.J., and SAAD and HOEKSTRA, JJ.

HOEKSTRA, J. After being discharged from his employment, Steven Nystrom, a deputy sheriff corrections officer for Lenawee County and a member of defendant labor council, pursued a grievance under the terms of the collective bargaining agreement between plaintiffs and defendant. Having exhausted the grievance procedures, defendant sought Nystrom's reinstatement pursuant to the arbitration process provided in the labor agreement. The arbitrator found Nystrom's dismissal to have been wrongful, sustained Nystrom's grievance, and awarded him reinstatement with back salary, benefits, and seniority. Plaintiffs filed a complaint, seeking to vacate the arbitration award, and defendant filed a countercomplaint, seeking to enforce it. Following a hearing regarding cross-motions for summary disposition, the

circuit court granted plaintiffs' motion for summary disposition under MCR 2.116(C)(10) and vacated the arbitrator's award on the grounds that the arbitrator exceeded the authority granted to the arbitrator under the labor agreement and that his award was contrary to public policy.

On appeal, defendant argues that the circuit court erred in granting plaintiffs' motion for summary disposition and denying its motion for summary disposition. Specifically, defendant claims that the circuit court exceeded its scope of review by substituting its own fact finding into the arbitrator's interpretation of the collective bargaining agreement, as set forth in the arbitration award. We disagree. Under the circumstances herein and in light of the parties' express contractual limitations on the arbitrator's power, we hold that the arbitrator exceeded his authority, and consequently, we affirm.

I

The underlying causes of Nystrom's discharge, the ensuing arbitration, and the instant suit are Nystrom's polygamy for over nine months in 1987-88, and his related false statements in official documents. A chronology of events leading up to Nystrom's discharge follows.

In July 1984, while married to April Coyle, Nystrom commenced employment with plaintiffs and took an oath of office.[1] While separated, but not divorced from Coyle, Nystrom married Susan Jones on May 1, 1987, in Las Vegas, Nevada. The Nevada marriage

---

[1] The record does not reflect in what capacity plaintiffs employed Nystrom from 1984 through 1992, but we assume that he was a deputy sheriff corrections officer.

license indicates that Nystrom's marriage to Jones was his first, although evidence revealed it was actually his third marriage. On July 2, 1987, approximately two months after his marriage to Jones, Nystrom petitioned for divorce from Coyle, which the circuit court granted on February 16, 1988. On his health insurance membership and record change form filed with the sheriff's department, Nystrom indicated that his date of marriage to Jones was February 17, 1988, the day after his divorce was final, instead of May 1, 1987. After providing this false information, Nystrom signed the form, certifying that to his knowledge and belief, the stated information was correct. Years later, on December 23, 1992, Nystrom was appointed to the position of deputy sheriff corrections officer for Lenawee County and he took a second oath of office.

In June or July 1996, a rumor circulated that Nystrom had been married to two women from May 1, 1987, through February 16, 1988. Sheriff Richard Germond phoned a contact in Las Vegas and verified the truth of the rumor. Upon receipt of written confirmation in September 1996, Sheriff Germond immediately informed the prosecuting attorney. In October 1996, during the campaign for sheriff in which Sheriff Germond, Nystrom, and one other individual were candidates, the media spread word of the alleged polygamy, although the source of the allegation remained unconfirmed. Sheriff Germond won the November 1996 election. On December 3, 1996, Sheriff Germond charged Nystrom, on the basis of Nystrom's polygamy, with violating certain sections of the sheriff's department's rules and regulations and his oath of office.

Nystrom participated in a *Garrity* hearing[2] on December 10, 1996, and thereafter the sheriff discharged him for violating the following three sections of the department's rules and regulations:

> Section 9.1, Individual Deportment.
>
> The conduct of the Departmental members shall be free from impropriety. Their personal behavior, both on and off duty, shall be such that at no time will it bring discredit to the Lenawee County Sheriff Office.
>
> Section 9.2, Obedience to Law.
>
> Members shall not knowingly violate any laws of the United States, State of Michigan, or any ordinance of a unit of local government.
>
> Section 10.4, Official Integrity.
>
> No member shall at any time intentionally manufacture, falsify or destroy evidence, nor shall he withhold evidence or information from his Commanding Officer.

Under the terms of the collective bargaining agreement, § 4.0, plaintiffs have the power "to suspend, investigate, demote, discharge, or take such other disciplinary action for just cause which is necessary to maintain the efficient administration of the [c]ounty." Moreover, the sheriff has the power "to make and enforce reasonable rules and regulations relating to personnel policies, procedures, and working conditions not inconsistent with the express terms of this Agreement." Further, pursuant to § 6.0, the employer may not discharge a nonprobationary employee, such

---

[2] *Garrity v New Jersey*, 385 US 493, 500; 87 S Ct 616; 17 L Ed 2d 562 (1967) (holding that the privilege against self-incrimination "prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office . . . ."). A *Garrity* hearing is an investigative interview allowing the interviewee to answer questions with the knowledge that any statements elicited therein will not be used against him in criminal proceedings.

as Nystrom, without just cause. In addition, the collective bargaining agreement specifically provides in relevant part that "[a]n employee shall lose his seniority and the employment relationship shall end" under certain circumstances, including:

> If he knowingly makes a false statement on his application for employment or on an application for leave of absence or on any other official document, provided, however, that after two (2) years from the date of said application for employment this provision shall be void as to said application for employment only. [Subsection 8.5(h).]

Following his discharge, Nystrom pursued a grievance under the collective bargaining agreement. After exhausting the grievance procedure, the parties proceeded with arbitration, as provided in the agreement. The agreement limits the arbitrator's powers in relevant part as follows:

> Section 5.4, Arbitrator's Powers.
>
> (a) The arbitrator's powers shall be limited to the application and interpretation of this Agreement as written. He shall at all times be governed wholly by the terms of this Agreement. The arbitrator shall have not [sic] power or authority to amend, alter, or modify this Agreement either directly or indirectly. . . .
>
> (b) Absent fraud, undue influence, corruption, conflict of interest, or the exercise of jurisdiction in excess of the jurisdiction conferred upon the arbitrator by this Agreement, the arbitrator's decision shall be final and binding upon the Employer, the Union, and employees in the bargaining unit.

In this arbitral hearing, the arbitrator was to determine whether Nystrom was discharged for just cause. To determine just cause, the arbitrator looked to Nystrom's alleged violations of §§ 9.1, 9.2, and 10.4 of the

rules and regulations and to subsection 8.5(h) of the collective bargaining agreement.

Despite finding that Nystrom committed polygamy and provided false statements on official documents, the arbitrator concluded:

> The employer cannot use its rules and regulations to do what the law does not allow [to] be done to a former biga-mist [sic] after six years of discontinuance of said bigamy [sic].
>
> While [Nystrom] has made several entries in the application for marriage and other forms, he has nevertheless maintained a clean record since February 17, 1988 until his discharge—a period of nine and one-half years.
>
> What was done to him by who[m]ever leaked that short episode of wrongdoing in his life, is the guilty one of the violations which brought discredit to the Sheriff's Department. The conduct unbecoming an officer of the Department had long been corrected and protected by the legal waiver of criminally charging him under the Michigan law of bigamy or polygamy.

Because the arbitrator erroneously determined that Nystrom's discharge was untimely and without just cause, he awarded Nystrom's reinstatement with accompanying salary, benefits, and seniority lost.

II

We review de novo a trial court's grant of summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998); *Russell v Dep't of Corrections*, 234 Mich App 135, 136; 592 NW2d 125 (1999). However, when considering the enforcement of an arbitration award, our review is narrowly circumscribed. *Port Huron Area School Dist v Port Huron Ed Ass'n*, 426 Mich 143, 150; 393 NW2d 811 (1986). In *Lincoln Park v Lincoln Park Police*

*Officers Ass'n*, 176 Mich App 1, 4; 438 NW2d 875 (1989), we set forth the relevant standard of review:

> The necessary inquiry for this Court's determination is whether the award was beyond the contractual authority of the arbitrator. Labor arbitration is a product of contract and an arbitrator's authority to resolve a dispute arising out of the appropriate interpretation of a collective bargaining agreement is derived exclusively from the contractual agreement of the parties. *Port Huron Area School Dist v Port Huron Ed Ass'n*, 426 Mich 143; 393 NW2d 811 (1986). It is well settled that judicial review of an arbitrator's decision is limited. A court may not review an arbitrator's factual findings or decision on the merits. *Port Huron, supra.* Rather, a court may only decide whether the arbitrator's award "draws its essence" from the contract. If the arbitrator in granting the award did not disregard the terms of his employment and the scope of his authority as expressly circumscribed in the contract, judicial review effectively ceases. *Port Huron, supra; Ferndale Ed Ass'n v School Dist for City of Ferndale No 1*, 67 Mich App 637; 242 NW2d 478 (1976).

Our Supreme Court, in *Port Huron, supra* at 151-152, discussed the limited scope of judicial review of labor arbitration awards arising from a contractual arbitration process and explained:

> An arbitrator who refuses to recognize the terms and conditions expressly circumscribing his jurisdiction and authority in resolving a submitted dispute, thereby exceeding the limits upon which the contractual submission is based, exceeds the consensual authority bestowed upon him by the contract, and the award resulting therefrom is without legal sanction. Whether an arbitrator exceeded his contractual authority is an issue for judicial determination. This well-established principle is within the limited scope of judicial review of labor arbitration awards and was articulated by the United States Supreme Court in *United Steel-*

*workers v Enterprise Wheel & Car Corp*, 363 US 593, 597;
80 S Ct 1358; 4 L Ed 2d 1424 (1960):

"[A]n arbitrator is confined to interpretation and applica-
tion of the collective bargaining agreement; he does not sit
to dispense his own brand of industrial justice. He may of
course look for guidance from many sources, yet his award
is legitimate only so long as it draws its essence from the
collective bargaining agreement. When the arbitrator's
words manifest an infidelity to this obligation, courts have
no choice but to refuse enforcement of the award."

In other words, an arbitrator may not act on his own
sense of personal justice, but is confined to interpre-
tation and application of the agreement. See *Pontiac
v Pontiac Police Supervisors Ass'n*, 181 Mich App
632, 634-635; 450 NW2d 20 (1989).

III

Here, we conclude that it is abundantly clear that
the arbitrator sympathized with Nystrom and felt that
a strict application of the sheriff's department's rules
and regulations and the provisions of the collective
bargaining agreement to the facts of this case caused
an unjust result. Further, it is apparent to us that to
avoid what he perceived as an unjust result, the arbi-
trator impermissibly resorted to his own form of
industrial justice. To effectuate the result that the
arbitrator determined to be fair, we find, required him
to exceed his contractual authority by violating the
plain meaning of the rules and regulations and sec-
tions of the collective bargaining agreement, by which
the parties were contractually bound, and by adding
requirements to the contract that did not exist.
Accordingly, we conclude, as did the trial court, that
the arbitrator exceeded the authority granted him in

the collective bargaining agreement and that his decision did not draw its essence from the agreement.

The arbitrator's most egregious abuse of authority occurred when he disregarded an express provision of the collective bargaining agreement that mandates discharge when an employee knowingly makes a false statement on an official document. The arbitrator found that Nystrom admitted "untruths" when he applied for the Las Vegas marriage license and when he made health care changes. These "untruths," including misrepresenting on the marriage license that the marriage was his first and fabricating, on his health care coverage form, that he married Jones on February 17, 1988, although the license reflects that the marriage occurred on May 1, 1987, were contained on official documents. Despite these lies, the arbitrator concluded that the second oath of office, taken December 23, 1992, "replaced any previous oath and the violations thereof," and treated the second oath as a contract clause superseding any prior oath and violations of any prior oath. In effect, the arbitrator created an exception that does not exist in the collective bargaining agreement. The specific language of the agreement bears repeating:

> An employee shall lose his seniority and the employment relationship shall end for any of the following reasons:
>
> *          *          *
>
> (h) *If he knowingly makes a false statement on* his application for employment or on an application for leave of absence or on *any other official document*, provided, however, that after two (2) years from the date of said application for employment this provision shall be void as to *said application for employment only.* [Subsection 8.5(h) (emphasis supplied).]

The plain language of the contract unequivocally states that Nystrom *shall* be discharged as a result of his false statements in official documents, which are not subject to the two-year limitation relating to employment applications only. The arbitrator cannot escape this contractual language by the fiction that a new contract was formed as a result of Nystrom's second oath of office, eradicating any culpability for previous wrongdoing. Section 1.1 of the collective bargaining agreement states that the sheriff and the board of commissioners may not enter into any agreement or contract with their employees that conflicts in any way with the terms or provisions of that agreement. The arbitrator modified the agreement by "creating" a new contract clause between plaintiffs and Nystrom. Clearly, the arbitrator improperly exceeded his authority where his conclusion, that Nystrom's discharge was without just cause, did not draw its essence from the parties' agreement. Indeed, his conclusion repudiated the very language of the applicable collective bargaining agreement.

Less egregious, but still beyond the granted authority, is the arbitrator's determination that Nystrom's responsibility for knowingly violating a Michigan law by committing polygamy is assuaged merely because such information came to light after the period of limitation for criminal prosecution had expired. The arbitrator found that Nystrom had committed polygamy, albeit a "milder form,"[3] because of his Las Vegas mar-

---

[3] The arbitrator deems Nystrom's polygamy a "milder form of illegality" because Nystrom, although married to two women during a period of over nine months, did not cohabit with both women during that period. Nystrom and Coyle were separated, because of irreconcilable differences, at the time of his marriage to Jones, and he petitioned for a divorce from Coyle approximately two months later.

riage to Susan Jones while still married to April Coyle. In fact, Nystrom admitted having been married to both women from May 1, 1987, through February 16, 1988. In Michigan, marriage to a woman while still married to another woman is a felony. MCL 750.439; MSA 28.694. Section 9.2 of the rules and regulations provides that "[m]embers shall not knowingly violate any laws of the . . . State of Michigan . . . ." Because the arbitrator found a violation of law, his inquiry should have ended at that point. Instead, the arbitrator examined the applicable statute of limitations, concluding that Nystrom was discharged without just cause because Nystrom could not be prosecuted for, nor convicted of, the crime of polygamy because of the expiration of the applicable period of limitation.[4] In basing his decision on this consideration, which had no basis in the parties' agreement and was contrary to the plain language of the rules and regulations, the arbitrator impermissibly exceeded his contractual authority. *Lincoln Park, supra* at 4. Indeed, the time limitations in the criminal code have no relevance to the rules set forth in the labor agreement.

Rather than applying the rules and regulations promulgated under the sheriff's power as given in the collective bargaining agreement to determine if just cause existed, the arbitrator asserted that the collective bargaining agreement could not override the law that provides a six-year period of limitation for criminally charging an individual for polygamy and spoke of plaintiffs' "side-stepping" the law. According to the arbitrator, "[t]o be able to sidestep the law's statute of

---

[4] The collective bargaining agreement does provide that an employee shall lose seniority and be discharged if convicted of a felony.

limitations to charge the Grievant [Nystrom] after the prescribed six year period from the time of monogamy after the discontinuance of the [polygamous] status would make mockery of the law's intent." The arbitrator relied on § 20.8 of the collective bargaining agreement, entitled "Separability," which allows any provision in conflict with any existing or future state or federal law to become inoperative. However, nowhere in the collective bargaining agreement or the rules and regulations promulgated thereunder is a criminal charge, prosecution, or conviction required. Instead, the agreement limits the arbitrator's power to applying and interpreting the agreement *as written* and precludes him from modifying the agreement. By reaching outside the terms of the written agreement and attempting to equate an unambiguous administrative rule with a statutory limitation period for a criminal offense, the arbitrator exceeded his authority, pursued his own sense of industrial justice, and rewrote the labor agreement to comport with his view of fairness.

Further, the arbitrator found that Nystrom had not publicized information regarding his bigamous (polygamous) status. Instead, the arbitrator stated that Nystrom "clearly did keep such allegedly wrong conduct as a secret—rather well kept" and concluded that "[o]nly by someone sponsoring the public awareness did the just cause include the bringing of discredit to the Department." However, § 9.1 provides that a member's conduct shall be free of impropriety and the member's "personal behavior, both on and off duty, shall be such that at no time will it bring discredit to the Lenawee County Sheriff Office." The arbitrator disregarded the plain language of this sec-

tion and focused on *who* disseminated the information about the inappropriate conduct rather than on the fact of the misbehavior or misconduct itself. Although the contract gives the sheriff the power to make and enforce rules and regulations, the arbitrator modified the agreement and the plain language of the rules by focusing on the source of the publication of the inappropriate conduct rather than the express behavior, and thereby exceeded his authority.

IV

Under these circumstances, the trial court properly vacated the arbitrator's award. Thus, we conclude that the trial court did not err in granting summary disposition in favor of plaintiffs and vacating the arbitrator's award because the arbitrator exceeded the authority granted him under the collective bargaining agreement and that his decision did not draw its essence from the agreement. Our holding renders moot the question whether the arbitration award violated public policy.

Affirmed.