*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN DEPARTMENT OF STATE POLICE,

Plaintiff/Counterdefendant-Appellee,

v

MICHIGAN STATE POLICE TROOPERS ASSOCIATION,

Defendant/Counterplaintiff-Appellant.

FOR PUBLICATION
December 28, 2023
9:10 a.m.

No. 363241
Ingham Circuit Court
LC No. 22-000136-CZ

Before: GLEICHER, C.J., and JANSEN and RICK, JJ.

PER CURIAM.

Defendant/Counterplaintiff, the Michigan State Police Troopers Association (MSPTA), appeals as of right an order denying their motion for summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact), and to enforce an arbitration award that was previously entered in its favor, and granting a motion to vacate the arbitrator's opinion and award. We reverse and remand for entry of an order enforcing the arbitrator's award.

## I. FACTUAL BACKGROUND

This case arises out of the arbitration of a grievance filed by the MSPTA, a labor union, on behalf of the grievant, a Michigan State Police trooper who was terminated after several male coworkers accused her of sexual assault. The events leading to her termination occurred at an MSPTA event. At the event, the grievant was intoxicated and allegedly "wedged her fingers into the anal crevice of a co-worker while he was walking next to his wife," which caused him to jump forward, at which point the grievant tried to grab his genitals. The grievant struck a second male coworker in the genitals, which was caught on surveillance video. She was also caught on surveillance video attempting to grab the anal crease and genitals of a third male coworker, and attempted to use physical manipulation tactics traditionally utilized "for purposes of gaining compliance from citizens" in order to do so. Further surveillance videos also allegedly captured the grievant grabbing the genitals of other male coworkers.

The grievant was suspended with pay pending an investigation. The investigation was in turn suspended because the Grand Traverse County Police initiated a criminal investigation into the incident. The grievant was ultimately charged with two counts of assault and battery and two counts of fourth-degree criminal sexual conduct (CSC-IV). Pursuant to the terms of a collective bargaining agreement (CBA), she was suspended without pay. She pleaded no contest to the two counts of assault and battery, in exchange for the dismissal of the two counts of CSC-IV. The grievant was sentenced to 30 days in jail, and released after 21 days.

Plaintiff/counterdefendant, the Michigan Department of State Police (MSP), completed a full investigation of the incident after the grievant was sentenced. The grievant attended an administrative interview on the matter, and was afforded an opportunity to present evidence on her own behalf. The MSP ultimately determined that the grievant violated Sections 4.5 (individual deportment), 4.6 (obedience to law), and 4.25 (compliance with official orders) of the MSP Code of Conduct. The proposed punishment was termination. The grievant's employment was terminated in August 2021.

The MSPTA filed a grievance on the grievant's behalf, and an arbitration hearing was subsequently held. The arbitrator issued an award in February 2022. The arbitrator explained that the dispute between the parties essentially turned on whether termination was an appropriate sanction or whether the grievant should have been subjected to progressive discipline, including suspension without pay, before being terminated. The arbitrator did not believe Trooper Moryc's actions constituted CSC-IV, and observed that Trooper Moryc explained in her administrative interview that she was just playing a game with her coworkers. The arbitrator agreed with the MSP's conclusion that Trooper Moryc's actions violated the MSP Code of Conduct. But regardless, the arbitrator believed that there was not just cause for termination in this case. The arbitrator pointed out that the incident was fueled by the grievant's excessive intoxication, and noted that the MSP had not terminated other employees over offenses committed while drunk. The arbitrator concluded:

> [W]hile discipline was appropriate, termination was too severe. It was one incident at a time when [the grievant] was highly intoxicated. It was not premeditated. She otherwise had a good record with no prior discipline. The conduct occurred off-duty, while she was not in uniform. It is my conclusion that considering the totality of the circumstances her conduct was not so serious as to require termination of employment. The parties' contract calls for progressive discipline when appropriate. It is my conclusion that progressive discipline is appropriate in this case.

The arbitrator ordered the grievant to be reinstated and that her punishment be reduced to an unpaid suspension. The arbitrator also ordered that she should be offered back pay from June 1, 2021, to her reinstatement.

The MSP subsequently filed a complaint against the MSPTA, arguing that the arbitrator exceeded the scope of her powers by requiring the MSP to reinstate the grievant's employment. The MSP explained that the arbitrator's award exceeded her authority because, according to the CBA, an arbitrator "shall not substitute his or her judgment for that of the Employer where the Employer is given discretion by the terms of the [CBA]." The MSP also argued that the award

violated public policy, noting that MSP employees "are statutorily required to be of good moral character[.]" Thus, the MSP asked the trial court to vacate the award.

The MSP subsequently filed a motion to vacate the arbitrator's award. There, the MSP again argued that the arbitrator exceeded the scope of her powers by setting aside the MSP's decision to terminate her employment. The MSP contended that the CBA gave it the exclusive power to decide the proper punishment for violations of the MSP Code of Conduct, and that the arbitrator could only determine whether just cause existed for the MSP to exercise its disciplinary power. The MSP further argued that the arbitration award violated a well-defined and dominant public policy against sexual harassment in the workplace. It explained that allowing the grievant to continue working for the MSP in spite of committing sexual harassment would exempt MSP from this public policy. Accordingly, the MSP asked the trial court to vacate the arbitration award.

After the MSP filed its motion to vacate, the MSPTA filed a motion for summary disposition under MCR 2.116(C)(8) and (C)(10), and to confirm and enforce the arbitration award. The MSPTA argued that the arbitrator did not exceed the scope of her powers by ordering the MSP to reinstate the grievant, nor was there any public policy rationale to support overturning the award. It also argued that the order was enforceable under the Uniform Arbitration Act (UAA), MCL 691.1681 *et seq*., noting that under MCL 691.1705(1), if a court confirms an arbitration award, "the court shall enter a judgment that conforms with the order." Further, contrary to the MSP's position, the MSPTA argued that the arbitrator had sole authority to determine whether there was just cause for terminating the grievant, noting that the CBA explicitly stated that "[t]he arbitrator shall have no authority except to pass upon . . . a claim of suspension, discharge, or demotion without just cause." For all of these reasons, the MSPTA asked the Court to grant its motion for summary disposition and motion to enforce the arbitrator's award.

The MSP filed an answer to the MSPTA's motion and again reiterated that the arbitrator exceeded the scope of her authority by reinstating the grievant's employment. The MSP further contended that forcing the organization to keep the grievant as an employee violated public policy. It asked the trial court to deny the MSPTA's motion for summary disposition and motion to enforce the arbitrator's award, and instead grant the MSP's motion to vacate the award. The MSPTA replied, contended that the MSP misrepresented the arbitrator's award and applicable caselaw, and asking again that the trial court enforce the terms of the award and grant its motion for summary disposition.

The trial court heard oral argument on the competing motions, and the parties largely argued consistent with their briefs. The trial court took the parties' arguments under advisement, and later issued its opinion and order vacating the arbitrator's award. According to the court,

> Art. 9 § 6 [of the CBA] clearly and unambiguously states that the Arbitrator may not substitute her judgment for the Plaintiffs in areas where the CBA assigns discretion to the Plaintiff, and Art. 8 § 3(c) allows the Plaintiff in this case the clear and unambiguous discretion to determine that an employee who is guilty of rule violations be subject to suspension without pay or discharge. The determination of discipline is thus a discretionary action assigned to the Plaintiff by the plain language of the CBA. This reading of § 3(c) is not contrary to Art. 8 § 8 because those provisions may still come into play in cases where an arbitrator does not find

that there is just cause to discipline for all charged violations under the Art. 8 procedures. In this case, however, the employee was found to have violated the Plaintiffs Code of Conduct. The Arbitrator agreed that the employee violated the Plaintiffs Code of Conduct. The Arbitrator agreed that there was just cause for discipline. Under Art. 8 § 3(c), discretion for determining the level of discipline after a finding of just cause remains with the Plaintiff.

The trial court declined to reach the issue of whether the arbitrator's ruling violated public policy. It thus denied the motions for summary disposition and for enforcement of the award, and granted the motion to vacate the award. This appeal followed.

## II. ANALYSIS

The MSPTA argues that the trial court erred by vacating the arbitrator's award. We agree.

"This Court reviews de novo a trial court's decision to enforce, vacate, or modify an arbitration award." *City of Ann Arbor v AFSCME Local 369*, 284 Mich App 126, 144; 771 NW2d 843 (2009). "Judicial review of an arbitrator's decision is narrowly circumscribed." *Id*. "A court may not review an arbitrator's factual findings or decision on the merits" or "engage in contract interpretation." *Id*. A reviewing court may not substitute its judgment for that of the arbitrator, and instead "may only decide whether the arbitrator's award 'draws its essence' from the contract. If the arbitrator in granting the award did not disregard the terms of his employment and the scope of his authority as expressly circumscribed in the contract, judicial review effectively ceases." *Sheriff of Lenawee Co v Police Officers Labor Council*, 239 Mich App 111, 118; 607 NW2d 742 (1999) (citations omitted). A court may also review an arbitrator's award for an error of law that clearly appears on the face of the award or in the reasons stated by the arbitrator for the decision. *Detroit Auto Inter-Ins Exch v Gavin*, 416 Mich 407, 441-443; 331 NW2d 418 (1982). The error must be "so material or so substantial as to have governed the award, and but for which the award would have been substantially otherwise." *Id*. at 443. "[A]rbitrators can fairly be said to exceed their power whenever they act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law." *Id*. at 434.

To the extent that this case involves the review of a trial court's ruling on a motion for summary disposition, we review such rulings de novo. *Coblentz v City of Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006). A motion under MCR 2.116(C)(8) "should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recovery." *Mich Ins Repair Co v Mfr Nat'l Bank of Detroit*, 194 Mich App 668, 673; 487 NW2d 517 (1992). "A motion under MCR 2.116(C)(10) should be granted only if the submitted evidence fails to establish a genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Allison v AEW Capital Mgmt, LLP*, 481 Mich 419, 424-425; 751 NW2d 8 (2008).

At issue here is essentially whether the arbitrator's award comported with the terms of the CBA, and whether the trial court substituted its own judgment for that of the arbitrator by vacating the opinion and award. We first turn to the question of whether the award was valid in accordance with the CBA. A CBA is a contract, and "[o]ur goal in contract interpretation is to give effect to the intent of the parties, to be determined first and foremost by the plain and unambiguous language

-4-

of the contract itself." *Wyandotte Electric Supply Co v Electrical Technology Sys, Inc*, 499 Mich 127, 143-144; 881 NW2d 95 (2016). Contracts must be construed as a whole, giving effect to every word, phrase, and clause. *Trader v Comerica Bank*, 293 Mich App 210, 216; 809 NW2d 429 (2011). If the language of a contract is unambiguous, the contract must be interpreted and enforced as written. *In re Egbert R. Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008).

Our Supreme Court has held that these principles apply to CBAs, stating:

> The foundational principle of our contract jurisprudence is that parties must be able to rely on their agreements. This principle applies no less strongly to collective bargaining agreements: when parties to a collective bargaining agreement bargain about a subject and memorialize the results of their negotiation in a collective bargaining agreement, they create a set of enforceable rules—a new code of conduct for themselves—on that subject. [*Macomb County v AFCSME Council 25 Locals 411 & 893*, 494 Mich 65, 80; 833 NW2d 225 (2013) (quotation marks and citations omitted).]

Arbitrators must abide by the terms and conditions that grant them jurisdiction and authority to resolve a dispute. *Port Huron Area School Dist v Port Huron Education Ass'n*, 426 Mich 143, 151; 393 NW2d 811 (1986). "[A]n arbitrator may not act on his own sense of personal justice, but is confined to interpretation and application of the agreement." *Lenawee Co*, 239 Mich App at 119. An arbitrator who refuses to abide by the terms of an agreement exceeds "the limits upon which the contractual submission is based, exceeds the consensual authority bestowed upon him by the contract, and the award resulting therefrom is without legal sanction." *Port Huron Area School Dist*, 426 Mich at 151-152. "Although the judicial policy favoring labor arbitration warrants a strong presumption in favor of enforcing arbitral awards, an award is properly vacated when that award is dependent upon . . . an arbitrator's disregard and contravention of provisions expressly limiting arbitral authority." *Id*. at 152.

The CBA between the parties sets forth a number of disciplinary actions that may be taken against employees, creates a framework for the grievance procedure, and outlines the powers and responsibilities of the arbitrator. Relevant here, Article 8, Section 3(c) states that an employee may be discharged under the following circumstances:

> *Suspension or Discharge after Investigation*. If an investigation establishes just cause for disciplinary action, a suspension without pay not to exceed 30 calendar days or a discharge may be issued after a disciplinary conference. A copy of the statement of charges and a proposed penalty shall be given to the employee and contemporaneously to the Association at least ten calendar days before the conference. The notice shall advise the employee of his or her right to Association representation at the conference. Upon proper notice of the charges and the proposed penalty, the employee may, in writing, accept the discipline, in which event no conference shall be held and no appeal shall be taken. The employee may submit a written statement in response to the statement of charges.

According to this provision, discharge is appropriate if, after an investigation is completed, just cause exists for disciplinary action. An employee may only be discharged after a disciplinary

conference is held. In this case, an investigation was conducted, and the grievant was able to attend an administrative interview and provide evidence on her own behalf. There appears to be no dispute that the investigatory portion of the disciplinary process was properly conducted.

Regarding the grievance procedure, Article 8, Section 5(b) of the CBA provides that "[u]pon receipt of written notice of the reasons for a suspension without pay or discharge, an employee may file a grievance pursuant to Article 9 of this Agreement . . . ." And regarding arbitration, Article 8, Section 8 states:

> Only the Association has the right to request that a discipline case proceed to arbitration.

> If the arbitrator reduces the suspension to less than the time already served, the employee shall receive all appropriate back pay and other benefits lost during the period of suspension, including full status and seniority.

> If the arbitrator reinstates an employee after discharge, the employee shall receive back pay and other benefits lost during the period of discharge, including status and seniority, consistent with the arbitration award.

These provisions directly indicate that the arbitrator has the power to reinstate an employee, reduce the length of a suspension, and take any other action necessary to make an employee whole after wrongful termination or suspension. Additionally, Article 9, Section 6 states, in relevant part:

> The arbitrator shall have no authority except to pass upon alleged violations of the expressed written provisions of this Agreement, the unreasonableness or misapplication of a rule or regulation, that a work order was unreasonable and arbitrary or involves discrimination in application, or *a claim of suspension, discharge, or demotion without just cause*.

> The arbitrator shall have no power or authority to add to, subtract from, ignore, or modify any of the terms of this Agreement and shall not substitute his or her judgment for that of the Employer where the Employer is given discretion by the terms of this Agreement.

> The arbitrator shall construe this Agreement in a manner which does not interfere with the exercise of either the Employer's or the employees' and the Association's rights and responsibilities, except to the extent that such rights and responsibilities may be expressly limited by the terms of this Agreement.

> The arbitrator shall not render any decision which would require or permit an action in violation of the Constitution of the United States or the Constitution of the State of Michigan.

> The arbitrator may take steps necessary to correct any abuse or to provide a fair resolution to the grievance or issues presented; however, the arbitrator is without authority to change or rewrite any provisions of the Agreement or insert his or her wisdom for that of the Employer or Association. The arbitrator shall have

no authority to award back pay for a period of time of more than 30 days from the date the written grievance was filed, except in instances of demotion, suspension, or discharge. [Emphasis added.]

The MSP argues that the CBA limits the arbitrator's authority to a determination of whether just cause existed for disciplining the grievant, while leaving the actual method of discipline solely in the MSP's hands. The MSP cites *Police Officers Ass'n of Mich v Manistee County*, 250 Mich App 339, 344; 645 NW2d 713 (2002), for the proposition that a trial court may vacate an arbitration award if the CBA contains no specific provisions "that 'clearly and unambiguously' state[] that the arbitrator cannot determine that . . . the infractions did not constitute just cause for discharge." Alternatively, the MSPTA argues that the arbitrator not only has the authority to determine whether just cause existed for disciplining the grievant, but also whether just cause existed for terminating her employment, as well as the authority to reinstate her if just cause did not exist.

In *Manistee Co*, the grievant was discharged and then reinstated by an arbitrator. *Id*. at 342-343. The trial court vacated the arbitrator's award, finding that "[b]y reducing the disciplinary action, the arbitrator exceeded his authority in contravention of section 5.4(B) of the collective bargaining agreement and substituted his own view for the discretion reserved to the sheriff under section 9.1(G) of the collective bargaining agreement." *Id*. at 343. This Court reversed. *Id*. at 348. Its analysis was based in part on an earlier ruling of this Court, which stated:

> Federal courts have taken the view that an arbitrator to whom a claim of discharge without just cause is submitted may, in the absence of language in the collective-bargaining agreement clearly and unambiguously to the contrary, determine that, while the employee is guilty of some infraction, the infraction did not amount to just cause for discharge and impose some less severe penalty. An arbitrator's imposition of a less severe penalty is without authority and contrary to the terms of the collective-bargaining agreement where the agreement clearly reserves to the employer, without being subject to review by an arbitrator, the power to discharge for the infraction found by the arbitrator to have been committed. We adopt this approach as our own. [*Monroe Co Sheriff v Fraternal Order of Police, Lodge 113*, 136 Mich App 709, 718-719; 357 NW2d 744 (1984) (citations omitted).]

The *Mainstee Co* Court explained:

> There is no language in the agreement at hand that "clearly and unambiguously" states that the arbitrator cannot determine that while [the grievant] was guilty of some infractions, the infractions did not constitute just cause for discharge. Accordingly, defendants' reliance on *Lenawee* [*Co*, 239 Mich App 111,] is misplaced. In *Lenawee* [*Co*], the Court's conclusion that the arbitrator in that case had acted beyond his granted authority was based in part on "an express provision of the collecting bargaining agreement that mandates discharge" under the circumstances of that case. *Lenawee* [*Co*], *supra* at 120; 607 NW2d 742. In the case at hand, there is no specific provision in the agreement mandating that an employee be discharged if the arbitrator finds that the employee committed the alleged violations of the agreement. Further, while § 9.1(F) of the agreement reserves to the sheriff "the right to make reasonable rules and regulations," there is

> nothing in the language of the rules cited by the arbitrator as having been violated
> that mandates discharge under these circumstances. [*Manistee Co*, 250 Mich App
> at 344-345.]

With these provisions in mind, two sections of the parties' CBA lead us to conclude that the MSPTA has correctly interpreted the CBA. First, under Article 8, Section 8, "[i]f the arbitrator reinstates an employee after discharge, the employee shall receive back pay and other benefits lost during the period of discharge, including status and seniority, consistent with the arbitration award." Further, under Article 9, Section 6,

> The arbitrator shall have no authority except to pass upon alleged violations
> of the expressed written provisions of this Agreement, the unreasonableness or
> misapplication of a rule or regulation, that a work order was unreasonable and
> arbitrary or involves discrimination in application, or *a claim of suspension,
> discharge, or demotion without just cause*. [Emphasis added.]

These portions of the CBA's language suggest that while the MSP may have the power to suspend or discharge employees at the outset, a labor arbitrator has the power to overturn such decisions if they are made without just cause. Nothing in the CBA suggests that an arbitrator is *only* permitted to determine whether just cause existed for the general discipline of an employee, rather than whether just cause existed for the specific sanction of employment termination. Instead, that the arbitrator is permitted to determine whether "a claim of suspension, discharge, or demotion [was] without just cause," indicates just the opposite.

Moreover, unlike the CBA at issue in *Lenawee Co*, nothing in the CBA here provides that an employee charged with or convicted of a crime is subject to mandatory termination, nor does it indicate that the arbitrator did not have the authority to reduce the grievant's punishment from termination to an unpaid suspension. "By failing to specifically define what acts constitute just cause for discharge, . . . the parties left the decision to the arbitrator." *Manistee Co*, 250 Mich App at 346, quoting *Bloomington v Local 2828 of the American Federation of State, Co & Municipal Employees*, 290 NW2d 598, 602 (Minn, 1980). Accordingly, the CBA did not preclude the arbitrator from reducing the grievant's termination to a mere unpaid suspension. In doing so, the arbitrator clearly "did not disregard the terms of his employment and the scope of his authority as expressly circumscribed in the contract," and thus, "judicial review effectively ceases." *Lenawee Co*, 239 Mich App at 118 (citations omitted). We cannot ignore the portions of the CBA that clearly give the arbitrator the right to determine whether she believed that discharge was supported by just cause, and to reinstate an employee if not. Thus, it is clear that the award was supported by the CBA. Anything beyond that is outside the scope of our review, since courts may not review an arbitrator's factual findings or decision on the merits, or engage in contract interpretation. *City of Ann Arbor*, 284 Mich App at 144 (citation omitted).[1]

---

[1] In support of its argument in favor of reversing the trial court's ruling, the MSPTA also argues that the award must be enforced because it conforms with the terms of the UAA, MCL 691.1681 *et seq*. The MSPTA specifically points to a provision of the UAA stating that "[o]n granting an

We now turn to the second half of the analysis, concerning whether the trial court erred by vacating the arbitrator's award. A reviewing court necessarily substitutes its own judgment for that of the arbitrator when it vacates or modifies an award that was properly granted under the scope of the arbitrator's authority. See *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 497; 475 NW2d 704 (1991); see also *Gavin*, 416 Mich at 429; *City of Ann Arbor*, 284 Mich App at 144. Here, the trial court concluded that the arbitrator's award should be vacated because it agreed with the MSP's argument that the CBA vested sole authority to determine the level of discipline applicable to MSP Code of Conduct violations. In doing so, however, the trial court overlooked that the CBA specifically gives the arbitrator authority to determine whether a suspension, discharge, or demotion was issued without just cause, as discussed *supra*. By finding otherwise, the trial court engaged in erroneous contractual interpretation and substituted its own judgment for that of the arbitrator.

In support of upholding the trial court's ruling, the MSP contends that forcing them to retain the grievant as an employee would violate public policy. Michigan has recognized a limited public policy exception to the general rule of judicial deference to an arbitrator's award. *Gogebic Medical Care Facility v AFSCME Local 992, AFL-CIO*, 209 Mich App 693, 697; 531 NW2d 728 (1995). This exception "is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedent and not from general considerations of supposed public interest." *United Paperworkers Int'l Union, AFL-CIO v Misco, Inc*, 484 US 29, 43; 108 S Ct 364; 98 L Ed 2d 286 (1987) (quotation marks and citations omitted). The MSP specifically notes that under MCL 28.4, Michigan State Police officers must be of "good moral character," with the implication being that the grievant is *not* of good moral character because of her behavior, which ultimately led her to plead guilty to two counts of assault and battery. The MSP also suggests that the grievant's behavior reflects poorly on the MSP as a whole. While this may be so, the MSP's overarching public policy argument lacks merit. It would be a fairly large leap of logic for this Court to infer that what ultimately amounted to misdemeanant behavior caused by excessive drinking at an after-hours event with coworkers means that the grievant was not of good moral character. The grievant's conduct was highly unbecoming. The grievant pleaded guilty to the two misdemeanor offenses. She was sentenced to 30 days in jail for her convicted conduct. Notably, in exchange for her plea, the more serious sexual assault offenses were dismissed. Her termination was predicated on all the charged conduct, and did not take into account the final outcome. That her behavior might tarnish the MSP's reputation is not the type of "well defined and dominant"

order confirming, vacating without directing a rehearing, modifying, or correcting an award, the court shall enter a judgment that conforms with the order. The judgment may be recorded, docketed, and enforced as any other judgment in a civil action." MCL 691.1705(1). The MSPTA's argument lacks merit. This provision is merely a procedural directive noting that when a trial court reaches a decision about an arbitration award, it must enter a judgment on the matter. Nothing about the statute indicates that it has anything to do with a trial court's substantive decision to enforce or vacate an arbitration award, as the MSPTA suggests. Further, the trial court *did* enter a judgment on this issue when it denied the MSPTA's motions for summary disposition and to enforce the arbitration award, and granted the MSP's motion to vacate the arbitration award.

public policy violation that would warrant overturning the arbitrator's ruling. Accordingly, the MSP has failed to show that public policy considerations justify reversing the trial court here.

## III. CONCLUSION

Under the CBA, the arbitrator is given the power to determine whether an employee was discharged without just cause. The arbitrator concluded the grievant was discharged without good cause and instead determined that unpaid suspension was proper in this case. The trial court therefore erred by vacating the arbitrator's award.

Reversed and remanded for entry of an order enforcing the arbitrator's award. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Michelle M. Rick