NEW ENGLAND CLEANING
SERVICES, INC., Plaintiff,
Appellee,

v.

SERVICES EMPLOYEES INTER-
NATIONAL UNION, LOCAL 254,
AFL–CIO, Defendant, Appellant.

No. 99–1029.

United States Court of Appeals,
First Circuit.

Heard Sept. 17, 1999.

Decided Dec. 20, 1999.

Marcelino La Bella for appellant.

Richard D. Wayne with whom John P. Martin and Hinckley, Allen & Snyder were on brief for appellee.

1. NECS's appeal from the district court's determination that the AAA was protected by arbitral immunity from civil liability was argued to us on the same day as the instant appeal, and is the subject of a separate opinion, issued simultaneously. *See New England Cleaning Services, Inc. v. American Arbitration Association,* 199 F.3d 542.

2. Article XXVI stated in full:

All disputes arising out of this Agreement or its application to any situation that may arise during the term of this Agreement shall be taken up in the following manner:
1. The individual employee shall take the matter up with a representative of the Employer.
2. If the matter is not settled as a result of their discussion, the employee and a Union representative shall take the matter up with

Before BOUDIN, Circuit Judge, COFFIN and CAMPBELL, Senior Circuit Judges.

CAMPBELL, Senior Circuit Judge.

Defendant-appellant Local 254, Service Employees International Union, AFL–CIO ("the SEIU") appeals from a declaratory judgment denying its right to arbitrate certain disputes. Pursuant to section 301 of the Taft–Hartley Act, 29 U.S.C. § 185, the district court held that plaintiff-appellee New England Cleaning Services, Inc. ("NECS") had terminated its collective bargaining agreement with the SEIU and that the effectiveness of the termination was not an arbitrable issue. We affirm.[1]

## BACKGROUND

Following an evidentiary hearing, the district court found the following facts, which the SEIU does not contest on appeal:

NECS is a maintenance and service contractor. On March 14, 1994, it entered into a collective bargaining agreement ("the Agreement") with the SEIU, which covered certain employees who worked at Harvard University. Article XXVI of the Agreement was titled "Grievances" and governed "[a]ll disputes arising out of this Agreement or its application to any situation that may arise during the term of this Agreement."[2]

the immediate supervisor of the employee involved.
3. If the matter is not settled as a result of their discussion, the matter shall be referred to the principal officer of the Employer and the Business Manager.
4. If no settlement is reached within 10 days after the occurrence of the act which is the subject of the grievance, either party may, by written notice to the other given within 30 days of the occurrence of such act, demand that the matter be submitted to arbitration under the rules of the American Arbitration Association. The decision of the arbitrator shall be final and binding on both parties, subject to review by courts of competent jurisdiction. The arbitrator shall be entitled to order that some or all of the expenses incurred through arbitration be payable by the party against whom judgment is found, based

By its terms, the Agreement was effective until August 31, 1996; and under an "evergreen clause," the Agreement would continue in effect thereafter until terminated by either party. A party could terminate the Agreement if it did so in writing more than 60 days before the stated expiration date. On August 2, 1994, Harvard informed NECS that it was discontinuing its use of NECS's services. On or about September 6, 1994, NECS mailed and faxed to the SEIU a letter stating that it was terminating the Agreement due to Harvard's discontinuance. NECS did not inform the Federal Mediation and Conciliation Service or any state mediation agency of its termination of the Agreement.

On June 2, 1998, the SEIU wrote to NECS to request information about employees within the bargaining unit and a conference to discuss payment of union dues.[3] The letter referred to the "collective bargaining agreement between your company and this union," and stated that failure to honor SEIU's requests would result in its submitting the disputes to arbitration in accordance with the Article XXVI of the Agreement. On June 16, NECS responded by stating that these grievances were untimely, because it had effectively terminated the Agreement in 1994. On August 3, 1998, the SEIU filed a demand for arbitration with the American Arbitration Association ("AAA"), a not-for-profit organization that provides voluntary dispute resolution services, claiming that NECS had "improperly" terminated the Agreement.

On September 17, 1998, NECS filed a complaint in the district court against both the SEIU and the AAA. Against the SEIU, it sought a declaration pursuant to section 301 of the Taft–Hartley Act, 29 U.S.C. § 185, that there was no collective bargaining agreement in force between

NECS and the SEIU and that NECS was not obligated to submit to arbitration. Against the AAA, NECS sought an injunction preventing further processing of the demand for arbitration as well as damages for compelling NECS to arbitrate.

Following an expedited evidentiary hearing, the district court held that NECS had properly terminated the Agreement and that there was no collective bargaining agreement presently in effect between it and the SEIU. It further declared that even if the Agreement were still in effect, the issue of the effectiveness of the termination would not be arbitrable. In a companion memorandum and order, the court dismissed NECS's complaint against the AAA on the ground that its decision to process SEIU's demand for arbitration was protected by arbitral immunity. *See* note 1, *supra.* The SEIU appeals from the former ruling.

### DISCUSSION

■ We review the district court's factual determinations for clear error, but afford plenary review to its formulation of applicable legal rules. *See Smith v. F.W. Morse & Co., Inc.,* 76 F.3d 413, 420 (1st Cir.1996).

On appeal, the SEIU does not dispute that NECS sent a letter that was sufficient under the terms of the Agreement to effect termination. It argues, however, that the termination was nonetheless incomplete because NECS failed to comply with the provisions set forth in section 8(d) of the NLRA, 29 U.S.C. § 159(d). Hence, the SEIU contends, the evergreen clause kept the Agreement continuously alive. Moreover, it argues, whether the Agreement was effectively terminated was an issue properly subject to arbitration under Section XXVI.

---

upon an allocation of relative fault between the parties.

The arbitrator shall have no authority to add to, alter, or detract from any of the provisions of this Agreement.

**3.** In its Memorandum and Order, the district court set forth this date as "January 2, 1998." The undisputed record, however, indicates that the correct date of the letter is June 2, 1998.

## I.

Section 8(d) of the NLRA, titled "Obligation to bargain collectively," defines collective bargaining. It states, in relevant part:

[W]here there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—

(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

(2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;

(3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and

(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later ...

29 U.S.C. § 159(d).

The SEIU contends that NECS did not properly terminate the Agreement because it failed to satisfy all of these elements. The district court found that while NECS had provided adequate notice under section 8(d)(1), by faxing and mailing the termination letter in September, 1994, it did not notify any of the federal or state mediation agencies referenced in section 8(d)(3). The district court did not address whether or not NECS fulfilled the two other requirements (offering to meet and confer and keeping the agreement in full force and effect for sixty days), and nothing in the record sheds light on those points.

In *Communications Workers of America v. Southwestern Bell Tel. Co.,* 713 F.2d 1118 (5th Cir.1983), failure to notify mediation services pursuant to section 8(d)(3) was held not to defeat the effectiveness of an employer's notice of termination. Citing case law and legislative history, the Fifth Circuit reasoned that

... in requiring that the party desiring to terminate a contract notify the mediation services, Congress intended only to facilitate the intervention of the FMCS when needed in contract disputes. We do not believe Congress meant to enact section 8(d)(3) as a hurdle over which a company (or union) must jump to effectively terminate a contract if it has timely notified its union (or company) of its intent to terminate.

*Id.* at 1127.

The purposes of the section 8(d) requirements are to "facilitate agreement" by giving parties to expiring collective bargaining agreements adequate time to work out their differences, free from threats of strikes or lockouts, and to place mediation services on notice that their assistance may be necessary. *Id.* at 1125–26. While a failure to notify mediation services might have ramifications for an unfair labor practice claim, it does not serve to extend a contract that could be terminated via notice under section 8(d)(1). *See id.* at 1126. *See also Procter & Gamble Indep. Union of Port Ivory, N.Y. v. Procter & Gamble Mfg. Co.,* 312 F.2d 181, 189 (2d Cir.1962) (failure to give timely notice to agencies under section 8(d)(3) did not extend the period of an expired agreement).

The present case is very similar on its facts to *Southwestern Bell.* It was not brought to determine whether or not NECS committed an unfair labor practice or breached the duty to bargain collectively. Rather, the relevant issue is whether the Agreement was terminated. *See id.* at 1125. The federal policies underlying section 8(d) would not be furthered by declaring the Agreement to be prolonged in the present circumstances. Here, as in *Southwestern Bell,* there was no threat of a strike or lockout. *See id.* Because Harvard had terminated its contract with NECS, it does not appear there were any issues of contention between NECS and the SEIU to be resolved; nor does it seem that a successor agreement was likely. No practical need for the mediation services has been demonstrated. *See id.* at 1126.

The SEIU attempts to distinguish *Southwestern Bell* on the ground that in that case, the employer had complied with three out of the four requirements set forth at section 8(d), while here, NECS complied with only one (the notice requirement set forth in subsection (1)). Even were the record clear that NECS failed to comply with sections (2) and (4), this distinction is not persuasive. The SEIU points to no evidence showing how it was prejudiced by NECS's failures to offer to meet and confer for contract talks and to extend the contract for sixty days after the notice of termination.[4] *See id.* at 1127. Under these circumstances, the requirements at sections 8(d)(2) and (4), like section 8(d)(3), were not prerequisites to effecting termination of the Agreement.

## II.

The SEIU also argues that the district court erred in holding, as an alternative basis for decision, that even if the

Agreement were still viable, the issue of the effectiveness of the termination would not be arbitrable under Article XXVI.

Whether a dispute concerning the termination of a collective bargaining agreement should be adjudicated by an arbitrator or by a court depends on whether the arbitration clause in the agreement is "broad" or "narrow." *See Int'l Bhd. of Elec. Workers, Local 1228 v. Freedom WLNE–TV, Inc.,* 760 F.2d 8, 10 (1st Cir. 1985) (citing *Rochdale Village, Inc. v. Public Service Emp. Union, Local No. 80,* 605 F.2d 1290, 1295–96 (2d Cir.1979)). Under a broad arbitration clause, i.e. one covering all types of disputes, "all questions, including those regarding termination, will be properly consigned to the arbitrator." *Id.* A "narrow" clause, however, covers only a limited range of disputes, such as employee grievances. In such cases, the court has a more involved role, and must consider "whether the conduct in issue is on its face within the purview of the clause." *Id.* We have adopted the Second Circuit's rule that under a narrow arbitration clause covering only employee grievances, "the court should not compel arbitration of questions of contract termination." *Id.*

Here, the district court correctly determined that the arbitration clause was "narrow." Although Article XXVI had general language at the beginning of the section, the four-step grievance process governed only grievances asserted by individual employees, not complaints brought directly by the union. In the absence of explicit indication that the parties intended Article XXVI to cover contract termination issues, we conclude that it does not. *See id.* Accordingly, it was the proper role of the district court, not an arbitrator, to decide

---

**4.** It is not clear whether or not the Agreement continued in full force and effect for 60 days as described in section 8(d)(4). Although the termination letter stated that NECS would no longer be providing services at the facility effective September 2, 1994, it did not set forth a date upon which the termination of the Agreement would be effective. The SEIU does not point to any events taking place within the 60 days following the termination letter that would indicate, or were affected by, whether the Agreement was in effect during that time.

whether the Agreement was effectively terminated.

The SEIU contends that the district court erred in construing Article XXVI to be a "narrow" arbitration clause. While conceding that the first three steps in the procedure pertain to employees' grievances, the SEIU points out that step four refers to "parties," not employees. Thus, it argues, the union could be considered a "party" and itself submit grievances to arbitration, including issues of contract termination.

Step four does not, however, stand alone, but rather is the final step in a process that can be initiated only by an employee, not the union. Whether step four permits the union to demand arbitration on behalf of the employee, or only the aggrieved employee, is academic: in either case, arbitration relates solely to a grievance initiated by an individual employee. Hence, the district court correctly determined that Article XXVI's arbitration clause covers only employee grievances and does not contemplate the arbitration of contract termination issues.

*Affirmed.*

