36th DISTRICT COURT v MICHIGAN AMERICAN FEDERATION OF
STATE, COUNTY & MUNICIPAL EMPLOYEES COUNCIL 25,
LOCAL 917

Docket No. 298271. Submitted January 4, 2012, at Detroit. Decided
February 28, 2012, at 9:05 a.m. Reversed in part, 493 Mich 879.

The 36th District Court brought an action in the Wayne Circuit Court
against the Michigan American Federation of State, County &
Municipal Employees Council 25, Local 917 (AFSCME Local 917),
seeking to vacate an arbitrator's award that determined that certain
grievances were arbitrable under the terms of a collective-bargaining
agreement (CBA) and challenging the arbitrator's decision that the
district court did not have just cause for not reappointing four court
officers and that those officers were to be reinstated to their former
positions. The district court and AFSCME Local 917 were parties to
a CBA that was in effect from June 30, 2003, through June 30, 2006.
The CBA was to remain in effect for consecutive yearly periods after
that date unless either party gave written notice of its desire to
modify, amend, or terminate the contract 90 days before the end date,
which the district court did. Two court officers, Bobby Jones and
Carlton Carter, were not reappointed to their positions by the chief
judge in 2004, while two other court officers, Richard Weatherly and
Roderick Holley, were not reappointed to their positions in 2007. In
an earlier action in this matter, AFSCME Local 917 had moved to
compel the district court to arbitrate the termination of employment
of the four individuals in accordance with the CBA. The circuit court,
Jeanne Stempien, J., entered an order requiring that an arbitration
hearing be held. The arbitrator ultimately rendered two decisions.
The arbitrator first determined that the grievances were arbi-
trable and then, after concluding the district court did not have
just cause for not reappointing the four court officers, ordered
that each grievant be reinstated to his former position with
back pay from the date he was not reappointed. Following those
decisions by the arbitrator, the district court filed this action to
vacate the arbitrator's decisions and awards, arguing that they
violated MCR 3.106(C) and that the awards exceeded the
arbitrator's contractual authority under the CBA. It further
argued that the CBA did not apply to the grievances of Weath-
erly and Holley because their claims accrued in 2007, after the

CBA had expired. The circuit court determined that the claims raised by AFSCME Local 917 were arbitrable and granted its motion for summary disposition. The district court appealed.

The Court of Appeals *held*:

1. Whether a contract to arbitrate exists and the enforceability of its terms is a judicial question that cannot be decided by an arbitrator. The parties must provide clear and unmistakable evidence in a contract that they agreed to remove the arbitrability issue from the court's jurisdiction. The trial court erred by ruling that the arbitrator had the authority to decide whether the CBA had terminated. A court, not an arbitrator, must decide whether a contract that contains a contractual duty to arbitrate has been terminated or is still in effect and thus mandates arbitration. The CBA did not contain clear and unmistakable language granting the arbitrator authority to determine the issue of arbitrability. Although the court erred by not deciding this issue, it could nonetheless be decided on appeal.

2. A notice to terminate a contract must be clear and explicit. A notice of modification is not a notice of termination and does not operate to terminate the CBA. A notice that refers to an intent to both modify and terminate a contract, without specifying which, is ambiguous and does not operate to terminate or modify the contract. The district court's letter indicating an intent to modify, amend, or terminate the agreement was ambiguous and did not terminate the agreement. Accordingly, the contract automatically extended for one more year on June 30, 2006, and the issues raised by all four grievants were subject to arbitration under the terms of the CBA.

3. Review of an arbitrator's decision is limited. A court may not review an arbitrator's factual findings but may review whether the arbitrator acted within the scope of his or her contractual authority or made an error of law that clearly appears on the face of the award. The trial court did not err by determining that the disputed issue of what constituted disciplinary action was within the terms of the CBA. The arbitrator had the authority to determine whether disciplinary action taken under the CBA included reappointment decisions because it involved an issue of contract interpretation and the CBA had not expressly excluded reappointment decisions from arbitration.

4. The judicial branch is constitutionally accountable for individuals who provide court services. The chief judge of a district court retains a measure of supervision over the duties

performed by court officers to ensure the sound administration of justice within the judicial district. Under MCR 3.106(C), court officers are appointed by the chief judge for a term of not more than two years. The rule does not preclude a chief judge from agreeing to use a just-cause standard for making reappointment decisions. The CBA required that all employment decisions would be subject to a just-cause standard. The arbitrator's decision that required the chief judge to use a just-cause standard of review when making reappointment decisions did not contravene a controlling principle of law because the court rule does not state what standard, if any, should apply to the reappointment decision. The arbitrator's decision was not contrary to law because he construed the CBA in harmony with MCR 3.106. However, the arbitrator exceeded his contractual authority by requiring that each of the four grievants be reinstated and reappointed to their former positions of court officer because under MCR 3.106(C), only the chief judge has authority to make appointment or reappointment decisions.

Affirmed in part, vacated in part, and remanded to the circuit court with directions to remand the matter to the arbitrator for a determination of an appropriate remedy.

1. ARBITRATION — COLLECTIVE BARGAINING — EXISTENCE AND TERMINATION OF AGREEMENT — JUDICIAL REVIEW.

Whether a contract to arbitrate exists or has terminated, and the enforceability of its terms, are judicial questions that cannot be decided by an arbitrator; the parties must provide clear and unmistakable evidence in a contract that they agreed to remove the arbitrability issue from the court's jurisdiction.

2. LABOR RELATIONS — COLLECTIVE BARGAINING — TERMINATION OF AGREEMENT — NOTICE.

A notice to terminate a collective-bargaining agreement must be clear and explicit; a notice of a desire to modify the collective-bargaining agreement is not a notice of termination and does not operate to terminate the contract; a notice that refers to an intent to both modify and terminate a contract, without specifying which, is ambiguous and does not operate to terminate or modify the contract; an ambiguous notice of an intent to modify, amend, or terminate a collective-bargaining agreement does not terminate the agreement.

3. ARBITRATION — COLLECTIVE BARGAINING — JUDICIAL REVIEW OF ARBITRATION AWARDS.

An individual's right to arbitrate must be based on a viable contractual right to arbitration, and review of an arbitrator's decision is

> limited; a court may not review an arbitrator's factual findings but may review whether the arbitrator acted within the scope of his or her contractual authority or made an error of law that clearly appears on the face of the award.

*Kotz, Sangster, Wysocki & Berg, P.C.* (by *Matthew S. Derby* and *Heather Gelfand Ptasznik*), for plaintiff.

*Miller Cohen, P.L.C.* (by *Robert D. Fetter* and *Austin W. Garrett*), for defendant.

Before: MURRAY, P.J., and TALBOT and SERVITTO, JJ.

MURRAY, P.J. Plaintiff, the 36th District Court, appeals as of right from an order granting a motion for summary disposition filed by defendant, Michigan American Federation of State, County and Municipal Employees (AFSCME) Council 25, Local 917, with respect to the 36th District Court's request to vacate an arbitration award. We affirm in part, vacate in part, and remand.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The 36th District Court and AFSCME Local 917 were parties to a collective-bargaining agreement (CBA) that applied to court officers and had a term of June 30, 2003-June 30, 2006. This case arises from the decision of the 36th District Court chief judge to not reappoint four individuals as court officers. Two of the individuals, Bobby Jones and Carlton Carter, were not reappointed in 2004. The other two individuals, Richard Weatherly and Roderick Holley, were not reappointed in 2007.

Each of the four individuals challenged the termination of his employment by filing (at different times) grievances and demands for arbitration. With respect to

the expiration of the CBA, Article 27 provided that it would be effective until June 30, 2006, but also stated:

> This Agreement shall continue in effect for consecutive yearly periods after June 30, 2006, unless notice is given, in writing, by either the Union or the Employer, to the other party at least ninety (90) days prior to June 30, 2006, or any anniversary date thereafter, of its desire to modify, amend or terminate this Agreement.

> If such notice is given, this Agreement shall be open to modification, amendment or termination, as such notice may indicate on June 30, 2006, or the subsequent anniversary date, as the case may be.

The 36th District Court had given notice 90 days before June 30, 2006, indicating a desire to modify, amend or terminate the agreement, and so took the position that the grievances were not subject to any arbitration agreement since the CBA had expired under Article 27. Additionally, it was and is the position of the 36th District Court that the appointment of court officers is governed by MCR 3.106, which provides that court officers are to be appointed by the chief judge of a court for terms not to exceed two years.

### A. BACKGROUND FACTS FROM THE 2007 WAYNE CIRCUIT COURT CASE

In 2007, AFSCME Local 917 filed an action against the 36th District Court in the Wayne Circuit Court, seeking to compel the 36th District Court to arbitrate the termination of the employment of the four individuals in accordance with the CBA. On June 12, 2008, the circuit court entered an order requiring that an arbitration hearing be held within 60 days. The 36th District Court appealed that order, which was assigned Docket No. 286432 in this Court.

While the appeal in Docket No. 286432 was still pending, the arbitrator rendered two decisions. In his first decision the arbitrator determined that the grievances were arbitrable, while in the second decision issued six months later, the arbitrator determined that the 36th District Court did not have just cause for terminating, or more precisely for not reappointing, the four grievants. Each grievant was to be reinstated to his former position and receive back pay effective from the date of termination or nonreappointment.

In August 2009, the 36th District Court filed a motion to remand in Docket No. 286432, requesting that the case be remanded to the trial court for a judicial decision on the issue of arbitrability. This Court granted the motion and ordered that the two lower court cases (the second case is discussed immediately below) be consolidated. *AFSCME v 36th Dist Court*, unpublished order of the Court of Appeals, entered September 2, 2009 (Docket No. 286432).

### B. THE INSTANT CASE

Before the motion to remand was filed in the prior case, the 36th District Court filed this action to vacate the arbitration decisions and awards on the ground that they violated the law and public policy as set forth in MCR 3.106, that the awards exceeded the arbitrator's contractual authority, and that the awards did not draw their essence from the CBA. The 36th District Court also alleged that the CBA did not apply to the grievances of Weatherly and Holley because their claims accrued after the CBA expired.

AFSCME Local 917 eventually moved for summary disposition on the ground that the disputed grievances were arbitrable, and also sought to enforce the arbitration awards. Less than a month later, the 36th District

Court moved to vacate the arbitration decisions and awards or, alternatively, for an evidentiary hearing to determine the issue of arbitrability. After a hearing and the filing of supplemental briefs the trial court determined in a written opinion and order that the claims raised by AFSCME Local 917 were arbitrable and granted its motion for summary disposition. This case is now before us on an appeal of right.

## II. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Coblentz v City of Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006). Although the trial court did not specify the particular subrule of MCR 2.116(C) under which it granted the motion for summary disposition, review is appropriate under MCR 2.116(C)(10) because the parties relied on evidence outside the pleadings. *Spiek v Dep't of Transp*, 456 Mich 331, 338; 572 NW2d 201 (1998). A motion under MCR 2.116(C)(10) should be granted only if the submitted evidence fails to establish a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 424-425; 751 NW2d 8 (2008).

We also review de novo a trial court's decision to enforce, vacate, or modify an arbitration award. *Ann Arbor v AFSCME Local 369*, 284 Mich App 126, 144; 771 NW2d 843 (2009). Labor arbitration falls within the realm of the common law, *id.*, where judicial review of an arbitration decision is limited, *City of Ferndale v Florence Cement Co*, 269 Mich App 452, 460; 712 NW2d 522 (2006). A court may not review an arbitrator's factual findings, *Ann Arbor*, 284 Mich App at 144; *Lenawee Co Sheriff v Police Officers Labor Council*, 239 Mich App 111, 118; 607 NW2d 742 (1999), but may

review whether the arbitrator acted within the scope of his or her contractual authority, *Lenawee Co Sheriff*, 239 Mich App 118. A court may also review an arbitrator's award for an error of law that clearly appears on the face of the award or in the reasons stated by the arbitrator for the decision. *DAIIE v Gavin*, 416 Mich 407, 441-443; 331 NW2d 418 (1982). The error must be "so material or so substantial as to have governed the award, and but for which the award would have been substantially otherwise." *Id.* at 443. "[A]rbitrators can fairly be said to exceed their power whenever they act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law." *Id.* at 434.[1]

### III. CONTRACT PERIOD OF THE CBA

Although the 36th District Court argues that the trial court failed to decide on remand whether the grievances were arbitrable, i.e., whether the CBA expired before the chief judge declined to reappoint Weatherly and Holley in 2007, the record belies this assertion.[2] The trial court unquestionably complied with the remand order, and clearly decided the arbitrability issue. The 36th District Court's real beef is the rationale utilized by the trial court, which we shall now examine.

---

[1] There is an exception to the substantial judicial deference given to arbitration awards. As we stated in *Gogebic Med Care Facility v AFSCME Local 992*, 209 Mich App 693, 697; 531 NW2d 728 (1995), "[a]s an exception to the general rule of judicial deference, we have recognized that a court may refuse to enforce an arbitrator's decision when it is contrary to public policy." However, the 36th District Court does not argue that the arbitration award reinstating the grievants violates the public policy of MCR 3.106.

[2] We state the obvious in noting that this issue only pertains to Weatherly and Holley, as Jones and Carter were not reappointed during the term of the CBA and filed their demands for arbitration in 2005.

An individual's right to arbitrate must be based on a viable contractual right to arbitration. *Ottawa Co v Jaklinski*, 423 Mich 1, 13; 377 NW2d 668 (1985). "The existence of a contract to arbitrate and the enforceability of its terms is a judicial question which cannot be decided by an arbitrator." *Arrow Overall Supply Co v Peloquin Enterprises*, 414 Mich 95, 99; 323 NW2d 1 (1982). Absent a binding contract, the parties cannot be required to arbitrate issues that arise between them. *Florence Cement*, 269 Mich App at 460; *AFSCME Council 25 v Wayne Co*, 290 Mich App 348, 350; 810 NW2d 53 (2010).[3]

The parties never disputed that the CBA contained an arbitration provision for grievances. Indeed, Article 8, § 1 of the CBA specifies:

> In the event differences should arise between the Employer and the Union *during the term of this Agreement as to the interpretation and application of any of its provisions*, the parties shall act in good faith to promptly resolve such differences in accordance with the following procedure. [Emphasis added.]

Article 8, § 10 provides for arbitration to resolve

> unresolved grievances *which relate to the interpretation, application, or enforcement of any specific Article and Section of this Agreement*, or any written Supplementary Agreement, which have been fully processed through the last step of the Grievance Procedure as herein provided may be submitted to arbitration . . . . [Emphasis added.]

The material question instead is whether the term of the CBA had ended, and therefore no contract to arbitrate existed, when court officers Weatherly and

---

[3] Although some issues do survive expiration of a collective-bargaining agreement, the right to only be terminated for just cause does not extend beyond the life of the contract. *Jaklinski*, 423 Mich at 27.

Holley were not reappointed in 2007. As noted earlier, Article 27 of the CBA provides:

> This Agreement shall become effective and binding on date of signing and remain in full force and effect until June 30, 2006.
>
> This Agreement shall continue in effect for consecutive yearly periods after June 30, 2006, unless notice is given, in writing, by either the Union or the Employer, to the other party at least ninety (90) days prior to June 30, 2006, or any anniversary date thereafter, of its desire to modify, amend or terminate this Agreement.
>
> If such notice is given, this Agreement shall be open to modification, amendment or termination, as such notice may indicate on June 30, 2006, or the subsequent anniversary date, as the case may be.[4]

In concluding that whether the CBA was terminated by the 36th District Court's March 1, 2006, letter was arbitratable, the trial court relied on the unpublished decision in *Int'l Ass'n of Bridge Workers Local No 44 v J & N Steel & Erection Co, Inc*, 8 Fed Appx 381 (CA 6, 2001), which held that it is for the arbitrator, not the court, to decide whether a contract has been terminated. We are by no means bound to follow federal caselaw interpreting a federal law similar in language to our state law, but we can look to it for guidance. *Murad v Prof & Admin Union Local 1979*, 239 Mich App 538, 542; 609 NW2d 588 (2000). Although the Sixth Circuit case relied on by the trial court and AFSCME Local 917 is an unpublished decision, there are many published decisions from the federal circuit courts of appeal that hold the same as did the *J & N Steel* court, including

---

[4] Provisions like Article 27, that contain an automatic renewal of the contract period if certain notice is not given with a prescribed time, are generally referred to as an "evergreen clause." *Vulcan Materials Co v Atofina Chems Inc*, 355 F Supp 2d 1214, 1240 (D Kan, 2005).

the Sixth Circuit in *Teamsters Local Union No 89 v Kroger Co*, 617 F3d 899, 906-907 (CA 6, 2010).

Indeed, numerous federal courts have concluded that when the contract contains a broad arbitration clause it is for the arbitrator, not the court, to decide whether a termination provision in a contract applies or has been properly invoked. See, e.g., *Brotherhood of Teamsters & Auto Truck Drivers Local 70 v Interstate Distrib Co*, 832 F2d 507, 511 (CA 9, 1987) ("When the collective bargaining agreement contains a broad arbitration clause, the question whether a particular act or failure to act effectively serves to terminate the agreement is to be resolved by an arbitrator."); *Acequip Ltd v American Engineering Corp*, 315 F3d 151, 155-156 (CA 2, 2003); *Unite Here Local 217 v Sage Hospitality Resources*, 642 F3d 255, 259-260 (CA 1, 2011). And, more specific to this case, at least one court has held that it is for the arbitrator to decide whether the employer's notice to terminate the contract complied with the notice of termination provision within the contract. *Rochdale Village, Inc v Pub Serv Employees Union, Local No 80*, 605 F2d 1290, 1295-1296 (CA 2, 1979); see, also, *Montgomery Mailers' Union No 127 v Advertiser Co*, 827 F2d 709, 713 (CA 11, 1987).

The rationale of these cases seems to be that because how a particular clause (like a termination clause) is to be interpreted and applied typically falls within the broad language of an arbitration clause, arbitrators must decide these issues. For example, in *Interstate Distrib*, 832 F2d at 512, the court held that the effect the parties' letters had under the termination clause was an issue of contract interpretation to be decided by the arbitrator:

> In the present case, Interstate sent a letter to the union requesting modification of the agreement. It contends that

> under the agreement this request served to terminate the contract between the parties as of the end of March. A week later, the Union stated that it, too, was willing to "open" the contract, apparently for negotiations. In June, the company again wrote the union, this time saying that it was withdrawing recognition. The parties are in agreement as to the facts. They disagree only as to the meaning and effect of the exchange of letters—as to whether it served to terminate the contract or merely provided an opportunity for renewed bargaining. It is not our role to pass on the merits of the parties' respective positions regarding the meaning and effect of the letters under their collective bargaining agreement.

Likewise, in *Sage Hospitality Resources*, 642 F3d at 259-261, the First Circuit held that the meaning of a duration clause in the contract is manifestly a matter of interpretation for the arbitrator, particularly when the arbitration clause is broad. In general, an arbitration provision that covers all disputes pertaining to the application and interpretation of a contract is considered broad in scope, while an arbitration clause limited to the issues it covers, like one that is limited to only resolving employee grievances, is considered narrow in scope. *New England Cleaning Servs, Inc v Servs Employees Int'l Union Local 254, AFL-CIO*, 199 F3d 537, 541 (CA 1, 1999).

However, as the United States Court of Appeals for the Eleventh Circuit recognized in discussing this generally supported rule, not all federal courts are in harmony on this issue. In *Advertiser Co*, 827 F2d at 713, the court cited many of the cases noted above, but also cited the Sixth Circuit decision in *Office & Prof Employees Int'l Union, Local 42 v United Auto, Aerospace & Agricultural Implement Workers of America*, 524 F2d 1316 (CA 6, 1975), as taking a contrary position. One of the issues in that case was "whether the district judge should have submitted to the arbitrator the determina-

tion whether the collective bargaining agreement had been terminated by the notice." *Office & Prof Employees*, 524 F2d at 1316. Though there are no facts telling us the details of the dispute, the court held that "[c]learly, it was for the district judge, not the arbitrator, to decide whether the contract had terminated." *Id*.

Similarly, in an earlier decision, *Local Union No 998 Int'l Union, United Auto, Aircraft & Agricultural Implement Workers of America v B & T Metals Co*, 315 F2d 432 (CA 6, 1963),[5] the Sixth Circuit reversed a district court's order compelling arbitration. In that case the employer sent a termination letter pursuant to a termination clause like the one involved in this case, and the contract end date came and went without a new contract. *Id*. at 434-435. Eventually a new contract was agreed to, but several grievances were filed regarding issues that arose during the intervening time between the two contracts. *Id*. at 435. The employer refused to arbitrate on the ground that no contract existed at the time, and the union argued that whether the contract actually expired was a matter for arbitration. *Id*. The district court agreed with the union, but the Sixth Circuit reversed. In doing so, the court recognized that if the agreement terminated according to its terms, and was not kept alive by the actions of the parties, then neither party had an obligation to arbitrate any matter arising after the contract ended. *Id*. at 435-436. Importantly, the court also opined that in principle there was no difference between a court deciding if a contract existed based on facts existing at its execution or subsequent thereto, as the question under either sce-

---

[5] *B & T Metals* was decided after the United States Supreme Court's "*Steelworker's* trilogy" that articulated the strong presumption in favor of arbitration and a deferential review of arbitration decisions. *B & T Metals*, 315 F2d at 436.

nario remains whether a contract exists between the parties requiring arbitration:

> In accordance with the foregoing rule, appellee's right to arbitrate the claimed grievances in the present case depends upon the existence of a contract so providing. Whether such a contract exists is a question, which, in our opinion under the authorities above cited, must be decided by the Court before any authority is conferred upon the arbitrator. Clearly, this is the rule in a case where the challenge is directed to the validity of the contract in its inception, and no question of the renewal or extension of the contract is involved.
>
> *We are of the opinion that the basic question is not changed by the fact that the question of the existence of the contract at the time when the grievances occurred depends upon facts occurring subsequent to the original execution of the contract instead of upon facts existing at the time of the execution of the contract. In either case the same legal question is presented, namely, whether at the time of the claimed grievances there was a valid bargaining agreement in existence, which existence is necessary in order for an employee or the Union to compel arbitration.* [*Id.* at 436 (emphasis added).]

Accord *Moldovan v Great Atlantic & Pacific Tea Co, Inc*, 790 F2d 894, 896-897 (CA 3, 1986) (noting that it is always a judicial question whether a collective-bargaining contract exists).

This brings us to Michigan law. Although there are no cases right on point, for several reasons we hold that whether a contract has been terminated—and therefore no longer exists, eliminating the contractual duty to arbitrate—is a question for the court, not the arbitrator. The first reason supporting this conclusion is the broad proposition under Michigan law that it is for the court, not an arbitrator, to decide if a contract to arbitrate exists. *Arrow Overall Supply*, 414 Mich at 99 ("The existence of a contract to arbitrate and the enforceabil-

ity of its terms is a judicial question which cannot be decided by an arbitrator."); *Jaklinski*, 423 Mich at 25; *Florence Cement*, 269 Mich App at 458 ("The existence of an arbitration agreement and the enforceability of its terms are judicial questions for the court, not the arbitrators."). This case raises that same fundamental issue; namely, is there still a contract that exists between the parties that requires arbitration of their disputes. This is a threshold question that our courts have always considered to be within the sole province of the judiciary, and no exceptions to this rule have been recognized by our courts.

Second, like the Sixth Circuit in *B & T Metals*, 315 F2d at 435, we reject a rationale that allows the judiciary to decide whether a contract came into existence because of some fundamental deficiency on the front end (i.e., during contract formation), but precludes a court from deciding whether by its terms the contract expired. The only difference between the two scenarios is that in determining whether a contract has terminated the court will have to construe a provision of a contract that had been agreed to by the parties. But this is also true when deciding if a matter falls within the provisions of an arbitration clause, and in that instance a court has to review the words agreed to by the parties and determine their meaning. Yet our courts have always held that whether a particular grievance falls within an arbitration clause is a question for the court. *Port Huron Area Sch Dist v Port Huron Ed Ass'n*, 426 Mich 143, 162-163; 393 NW2d 811 (1986); see also *AFSCME Council 25*, 290 Mich App at 352-354.

Our decision in *Highland Park v Mich Law Enforcement Union, Teamsters Local No 129*, 148 Mich App 821; 385 NW2d 701 (1986), supports the notion that courts must to a limited extent review provisions of a

contract in deciding the initial arbitrability issue. In *Highland Park* a collective-bargaining agreement between the parties expired on June 30, 1982. In August of that year the union filed a grievance over the appointments made after expiration of the contract. *Id.* at 823. The employer argued that the grievances were not arbitrable, but the union contended that the terms of the expired contract still governed the parties' conduct. An arbitrator ruled in favor of the union on the merits of the grievances, but the circuit court vacated the award. *Id.* On appeal the union argued that the trial court had gone beyond its limited scope of review in ruling that the arbitration provision did not extend beyond the expiration of the contract. This Court disagreed, holding that the court must consider to some extent the contract terms in deciding whether a contract to arbitrate still exists:

> The instant grievances were clearly based upon events which occurred after the collective bargaining agreement was terminated on June 30, 1982 (*i.e.*, the reorganization of the police department on July 1, 1982, and the appointment of six officers on August 5, 1982). Although the grievances would have been arbitrable had they arisen *during* the life of the agreement, under the terms of the agreement they are not arbitrable after expiration. See, *e.g.*, *General Warehousemen & Employees Union Local No 636 v J C Penney Co*, 484 F Supp 130 (WD Pa, 1980). Because the grievances were not arbitrable, the circuit court properly vacated the arbitration award.
>
> We recognize that the circuit court construed the arbitration provision contained in the collective bargaining agreement. This was necessary, however, to determine the initial question of arbitrability.
>
> In *Ottawa County v Jaklinski, supra,* the Supreme Court reaffirmed that the question of arbitrability is for the courts. The court additionally recognized that the parties may agree to extend beyond contract expiration certain

substantive or procedural rights and "may explicitly agree that accrued and vested rights and the right to arbitrate concerning them also extinguish at contract termination". 423 Mich 24. *Thus, the Supreme Court recognized that, as a prerequisite to deciding the question of arbitrability, a court must, on occasion, determine whether the parties have agreed to terminate arbitration rights upon the expiration of the collective bargaining agreement.* As the circuit court in the instant case was confronted with this question, we cannot say that it exceeded the permissible scope of review. [*Id.* at 825-826 (emphasis added).]

Third, in order to remove a nonprocedural arbitrability[6] issue from the court's jurisdiction, parties must provide "clear and unmistakable evidence" that they agreed to do so. *First Options of Chicago, Inc v Kaplan*, 514 US 938, 944; 115 S Ct 1920; 131 L Ed 2d 985 (1995). This holding from *First Options* was premised upon the principle, deeply embedded in Michigan law, that arbitration is a matter of contract and that no party can be forced to arbitrate when they did not agree to do so. *Id.* at 944-945. In explaining why there must be clear and unmistakable evidence of the party's agreement to allow an arbitrator to rule on arbitrability, the Court stated:

Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so. *AT&T Technologies, [Inc v Communications Workers of America*, 475 US 643, 649; 106 S Ct 1415; 89 L Ed 2d 648 (1986)]; see [*United States Steelworkers v] Warrior & Gulf [Navigation Co*, 363

---

[6] Procedural arbitrability refers to defenses to arbitration such as timeliness, waiver, etc., and, on those issues (which are not present in this case), "Michigan law . . . provides that arbitrators, rather than courts, should decide the application of such potential defenses to arbitration as contractual limitation periods, statutes of limitation, and the doctrine of laches." *Amtower v William C Roney & Co (On Remand)*, 232 Mich App 226, 233; 590 NW2d 580 (1998).

US 574, 583 n 7; 80 S Ct 1347; 4 L Ed 2d 1409 (1960)]. In this manner the law treats silence or ambiguity about the question "*who* (primarily) should decide arbitrability" differently from the way it treats silence or ambiguity about the question "*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement"—for in respect to this latter question the law reverses the presumption. See *Mitsubishi Motors* [*Corp v Soler Chrysler-Plymouth, Inc*, 473 US 614, 626; 105 S Ct 3346; 87 L Ed 2d 444 (1985)] (' "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" ') (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 [103 S Ct 927; 74 L Ed 2d 765] (1983)); *Warrior & Gulf* [363 US at 582-583].

But, this difference in treatment is understandable. The latter question arises when the parties have a contract that provides for arbitration of some issues. In such circumstances, the parties likely gave at least some thought to the scope of arbitration. And, given the law's permissive policies in respect to arbitration, see, *e.g., Mitsubishi Motors,* [473 US at 626], one can understand why the law would insist upon clarity before concluding that the parties did *not* want to arbitrate a related matter. See [1] Domke [, Commercial Arbitration] § 12.02, p. 156 [(rev ed, supp 1993)] (issues will be deemed arbitrable unless "it is clear that the arbitration clause has not included" them). *On the other hand, the former question—the "who (primarily) should decide arbitrability" question—is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers.* Cf. Cox, Reflections Upon Labor Arbitration, 72 Harv.L.Rev. 1482, 1508-1509 (1959), cited in *Warrior & Gulf,* 363 US, at 583, n. 7, 80 S.Ct., at 1353, n. 7. *And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the "who should decide arbitrability" point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not*

> *an arbitrator, would decide. Ibid.* See generally *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 219-220 [105 S Ct 1238; 84 L Ed 2d 158] (1985) (Arbitration Act's basic purpose is to "ensure judicial enforcement of privately made agreements to arbitrate"). [*Id.* at 944-945 (emphasis added).]

The rationale of *First Options* should apply with equal force in Michigan, for as we have noted, Michigan law has long provided that arbitration is purely a matter of contract between the parties, and because of that no one can be compelled to arbitrate an issue unless it was agreed upon. *Florence Cement,* 269 Mich App at 460; *AFSCME Council 25,* 290 Mich App at 350. And, since Michigan law requires a court to decide this initial question of arbitrability, *Arrow Overall Supply,* 414 Mich at 99, if the parties desire the opposite result, i.e. the arbitrator deciding the issue, the parties must explicitly so provide in the contract.[7]

In light of the foregoing, we hold that the trial court erred in ruling that the arbitrator should decide whether the contract had terminated, for that question is no more than whether a contract to arbitrate exists, which is a question to be decided by the courts. *Microchip Technology Inc v US Philips Corp,* 367 F3d 1350,

---

[7] At least two federal circuit courts of appeal have limited *First Options* to the commercial arbitration setting, see *Abram Landau Real Estate v Benova,* 123 F3d 69, 73-74 (CA 2, 1997), and *United Brotherhood of Carpenters & Joiners of America, Local No 1780 v Desert Palace, Inc,* 94 F3d 1308, 1311 (CA 9, 1996). However, several other courts have applied *First Options* to labor arbitration issues, see *Aircraft Braking Sys Corp v Local 856, UAW,* 97 F3d 155, 160-161 (CA 6, 1996); *Peabody Holding Co, LLC v United Mine Workers of America Int'l Union,* 665 F3d 96, 104-105 (CA 4, 2012), and for good reason. The *First Options* court relied heavily on both traditional labor law cases (like *Steelworkers*), see *PaineWebber Inc v Elahi,* 87 F3d 589, 594 n 6 (CA 1, 1996) (noting that fact), and traditional contract principles that have always applied to traditional labor law arbitration issues, see *First Options,* 514 US at 942-945.

1357-1358 (CA Fed, 2004). And, in order to have the arbitrator decide this initial question of arbitrability, the parties must have expressed an agreement to do so through "clear and unmistakable" language, and a generally broad arbitration provision like the one in this case does not suffice. *Lebanon Chem Corp v United Farmers Plant Food Inc*, 179 F3d 1095, 1100 (CA 8, 1999).

This error, however, has no real impact on this case.[8] Although the trial court should have decided the issue of arbitrability, we can do so now. In doing so we conclude, as did a prior panel of this Court in an appeal involving an identical letter of termination issued by the same employer under an identical termination clause, that the notice was insufficient to prevent the automatic continuation of the agreement. As stated in *36th Dist Court v AFSCME Local 3308*, unpublished opinion per curiam of the Court of Appeals, issued June 24, 2010 (Docket No. 291643), pp 2-3:

> The first paragraph of article 50 must be understood in light of the second paragraph that explicitly states the effect of providing notice. "If such notice is given, this Agreement *shall be open* to . . . ." The second paragraph indicates that the 90-day notice is required to preserve the right to modify, amend, or terminate the agreement on June 30, 2006, or a subsequent anniversary date. The 90-day notice of the "desire to modify, amend or terminate" the agreement is not itself effective as a modification, amendment, or termination of the CBA. Rather, the CBA in this case contemplates some additional action. Plaintiff does not point to any further action it took to terminate the agreement. An affidavit from defendant's staff representative states that plaintiff "has never communicated in

---

[8] We may affirm a trial court's decision even if we do not fully agree with its reasoning. *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000).

writing that it has terminated the collective bargaining agreement." Therefore, the March 1, 2006, letter did not terminate the CBA because it only referenced an *intent* to modify, amend, or terminate.

Furthermore, plaintiff's contention that the March 1 letter resulted in termination of the CBA ignores the ambiguity of the language in the letter. The letter referenced plaintiff's intent to "modify, amend or terminate all or parts of the Labor Agreement . . . ." "A notice to terminate must be clear and explicit. . . . A notice of modification is not a notice of termination and does not affect termination of the contract." *Chattanooga Mailers Union Local No 92 v Chattanooga News-Free Press Co*, 524 F2d 1305, 1312 (CA 6, 1975) (internal citations and quotation marks omitted), overruled on other grounds in *Bacashihua v United States Postal Service*, 859 F2d 402, 404 (CA 6, 1988); see also *Office & Professional Employers Int'l Union, Local 42, AFL-CIO v United Automobile, Aerospace & Agricultural Implement Workers of America, Westside Local No 174, UAW*, 524 F2d 1316, 1317 (CA 6, 1975), and *Laborers Pension Trust Fund Detroit and Vicinity v Interior Exterior Specialists Constr Group, Inc*, 479 F Supp 2d 674, 684 (ED Mich, 2007). When a party provides a notice that refers to an intent to both modify and terminate without specifying which one, "the ambiguity of the notice destroys its effectiveness for any purpose . . . ." See *Gen Electric Co v Int'l Union United Automobile, Aircraft & Agricultural Implement Workers of America (UAW-CIO)*, 93 Ohio App 139, 147; 108 NE2d 211 (1952). In *Gen Electric*, a pre-printed notice form stated, "This is a 60-day notice to you that we propose to (modify) (terminate) our collective bargaining contract," with an unfulfilled directive to "(Strike out one)" (quotation marks omitted). *Id*. at 144. The Ohio Court of Appeals explained:

"They could not terminate and modify the same contract at the same time by the same notice. However, it seems, according to the defendants' testimony and contention, they attempted by the notice served upon the plaintiff to do just that, but in attempting to do both, they did neither." [*Id*. at 147.]

> In the present case, plaintiff's notice indicated an intent to "modify, amend or terminate all or parts of the Labor Agreement . . . ." The expression of an intent to modify the CBA is just as strong as the expression of an intent to terminate the agreement. Even disregarding the second paragraph of article 50, the notice is too ambiguous to be effective as a notice of intent to terminate the agreement.

For these same reasons, we hold that the March 1, 2006 letter did not terminate the contract, and therefore the contract automatically extended for one more year. As such, the issues raised in the Weatherly and Holley grievances, as well as those in the Jones and Carter grievances, were properly subject to arbitration.

Because of this holding, our review of the arbitrator's decision is limited. Because fact-finding is quintessentially an arbitrator function, review of these facts falls outside our judicial review. *Ann Arbor*, 284 Mich App at 144. To the extent that the 36th District Court argues that the arbitrator exceeded his authority in resolving this issue, as was explained in *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 497; 475 NW2d 704 (1991), "an allegation that the arbitrators have exceeded their powers must be carefully evaluated in order to assure that this claim is not used as a ruse to induce the court to review the merits of the arbitrators' decision."

### IV. REAPPOINTMENT DECISIONS

The 36th District Court raises various additional arguments concerning the arbitrability of the chief judge's decision to not reappoint each of the four grievants. In particular, the 36th District Court argues that reappointment decisions are not subject to the disciplinary procedures in Article 12, § 1(A), which specifies that "[d]isciplinary action including discharge

shall be imposed only for just cause," and that even if they are subject to that provision, it could not be enforced because it would violate MCR 3.106.

Addressing first the argument concerning the arbitrability of the reappointment decisions, we find no error in the trial court's determination that the question whether disciplinary action under Article 12 would include reappointment decisions was arbitrable because it involved an issue of contract interpretation. Here, the CBA does not exclude reappointment decisions from arbitration, and Article 8 of the CBA provides that differences between the parties "as to the interpretation and application of any of [the CBA] provisions" be submitted to arbitration. Because the disputed issue concerning what constitutes disciplinary action was arguably within the arbitration agreement, and the dispute was not expressly exempted from arbitration by the terms of the CBA, the trial court did not err in determining that it was arbitrable. *In re Nestorovski Estate*, 283 Mich App 177, 202; 769 NW2d 720 (2009).[9] Consequently, whether a nonrenewal of an appointment constitutes loss of employment, or a discharge for purposes of a discharge-for-cause provision, is an arbitrable issue because it is a matter of contract interpretation that the parties authorized the arbitrator to decide. *Monroe Co Sheriff v Fraternal Order of Police, Lodge 113*, 136 Mich App 709, 717; 357 NW2d 744 (1984).

The 36th District Court's reliance on *Lanting v Jenison Pub Sch*, 103 Mich App 165, 175; 302 NW2d 631 (1981), is misplaced because the contract language in this case is distinguishable from the contract language at issue in *Lanting*, which contained an explicit

---

[9] Appendix B to the CBA does not alter this conclusion. Although that document shows an intent to bargain over what to do with court officers who are not reappointed, it says nothing about what standard applies to the reappointment decision.

agreement to "exclude from arbitration matters covered under the teachers' tenure act, *i.e.*, the nonrenewal of the contracts of probationary teachers."

Turning now to the 36th District Court's argument that application of the CBA to reappointment decisions violates MCR 3.106, we limit our review to whether the arbitrator's decision contravenes controlling principles of law. *DAIIE*, 416 Mich at 434, 443. We apply rules of statutory construction when construing a court rule. *Lawrence M Clarke, Inc v Richco Constr, Inc*, 489 Mich 265, 272; 803 NW2d 151 (2011). Therefore, in construing a court rule, a court may not read into the rule what is not within the Supreme Court's intent as derived from the language of the rule. *AFSCME v Detroit*, 468 Mich 388, 400; 662 NW2d 695 (2003). In conducting this review, we find no basis for concluding that the arbitrator's interpretation of the CBA to require that the chief judge use a just-cause standard when making reappointment decisions contravenes MCR 3.106(C). That rule provides:

> Court officers may be appointed by a court for a term not to exceed 2 years.
>
> (1) The appointment shall be made by the chief judge. Two or more chief judges may jointly appoint court officers for their respective courts.
>
> (2) The appointing court must specify the nature of the court officer's employment relationship at the time of appointment.
>
> (3) The appointing court must maintain a copy of each court officer's application, as required by the State Court Administrative Office.
>
> (4) The State Court Administrative Office shall develop a procedure for the appointment and supervision of court officers, including a model application form. Considerations shall include, but are not limited to, an applicant's character, experience, and references. [MCR 3.106(C).]

While MCR 3.106(C) provides that a chief judge may appoint a court officer for "a term not to exceed 2 years," nothing in MCR 3.106 precludes a chief judge from agreeing to use just cause as a criterion for making reappointment decisions. And, that is precisely what occurred here. That is, in negotiating and signing the CBA, the chief judge agreed that all employment decisions would be subject to a just-cause standard. Because the court rule does not state what, if any, standard should apply in the reappointment decision, the arbitrator's decision was not contrary to the court rule. Because the CBA can be construed in harmony with MCR 3.106, and the arbitrator did so in this case, the trial court correctly concluded that the arbitrator's decision is not contrary to law.[10] As recognized in *AFSCME Council 25 v Wayne Co*, 292 Mich App 68, 88 n 6; 811 NW2d 4 (2011), the judicial branch's constitutional accountability for court operations does not mean that a court can refuse to honor a collective-bargaining agreement that it has voluntarily entered into under the public employment relations act (PERA), MCL 423.201 *et seq*.

We do, however, find merit to the 36th District Court's argument that the *remedy* ordered by the arbitrator should be modified.

When parties agree to submit a matter to arbitration, they invest the arbitrator with sufficient discretion to resolve their dispute in a manner which is appropriate under the circumstances. Where the collective bargaining

---

[10] We note that the record does not indicate that the chief judge's reappointment decisions involved any plan to eliminate court officer positions. It is apparent that the just-cause standard for a disciplinary action under the CBA would not apply to a reduction in the number of court officer positions. Therefore, we limit our holding to circumstances that do not involve the elimination of a court officer position, but rather only whether a particular individual should be reappointed to fill the position.

agreement is silent as to permissible remedies, an arbitrator does not add to the obligations contractually assumed by the parties by fashioning a remedy which is appropriate under the circumstances. *Wayne Co Bd of Comm'rs v National Union of Police Officers*, 75 Mich App 375, 381; 254 NW2d 896 (1977), lv den 401 Mich 817 (1977). [*Mich Ass'n of Police v City of Pontiac*, 177 Mich App 752, 760; 442 NW2d 773 (1989).]

The CBA does address possible remedies, and provides in pertinent part:

Arbitrators shall be without authority to *require* the Employer to delegate, alienate, or relinquish any powers, duties, responsibilities, obligations, or discretions *which by State Law* or State Constitution *the Employer cannot* delegate, alienate, or relinquish or pay any funds other than back wages. [Emphasis added.]

The arbitrator's award requiring that each of the four grievants be "reinstated to their former position of court officer" requires the chief judge to "re-appoint" the grievants to perform all duties in their former positions, and in issuing that award the arbitrator exceeded his contractual authority. By court rule, only the chief judge has the authority to make appointment or reappointment decisions under MCR 3.106(C). Thus, although the court rule is silent about what (if any) standard is to apply to a reappointment decision, it affirmatively states that only the chief judge shall make the appointment decisions. In addition, as indicated previously, the judicial branch is constitutionally accountable for individuals who provide court services. *AFSCME Council 25*, 292 Mich App at 97. The presiding or chief judge of a district court retains a measure of supervision over the duties performed by court officers to ensure the sound administration of justice within the judicial district. *Menken v 31st Dist Court*, 179 Mich App 379, 381-382; 445 NW2d 527 (1989).

Because the CBA in this case does not abrogate the chief judge's authority to appoint or reappoint court officers in the first instance—and in fact affirmatively provides that the arbitrator cannot, through his award, require the employer to relinquish any responsibility that by state law or the constitution cannot be relinquished— the arbitrator exceeded his jurisdiction by requiring the chief judge to reappoint the grievants to their former positions. Cf. *Monroe Co Sheriff*, 136 Mich App at 720 (collective-bargaining agreement did not abrogate sheriff's statutory authority to determine which deputies should have law enforcement duties). Therefore, we vacate the trial court's order in part and remand for the trial court to modify its summary disposition order to provide that the arbitration award cannot be enforced as it infringes on the chief judge's authority to appoint or reappoint court officers under MCR 3.106.

Finally, our conclusion does not require us to determine whether the PERA controls over the court rule. Instead, the terms of the CBA itself limit the remedial authority of the arbitrator, and those limitations bring into play the commands of MCR 3.106. Consequently, both the PERA and the court rule are being enforced by our decision today.

Affirmed in part, vacated in part, and remanded to the circuit court, which shall remand the matter to the arbitrator for a determination of the appropriate remedy consistent with the holding of this Court. No costs, a question of public importance being involved. MCR 7.219(A). We do not retain jurisdiction.

TALBOT and SERVITTO, JJ., concurred with MURRAY, P.J.